Rob William BORCHGREVINK,
Appellant,

v.

Kimberly Sue BORCHGREVINK,
Appellee.

No. S–7784.

Supreme Court of Alaska.

June 27, 1997.

Peter F. Mysing, Kenai, for Appellant.

Ilona Bessenyey, Michael Gershel, and Robert K. Hickerson, Anchorage, Alaska Legal Services Corporation, and Robin Bronen, Anchorage, for Appellee.

Before COMPTON, C.J., MATTHEWS, EASTAUGH, FABE, and BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

## I. *INTRODUCTION*

Rob Borchgrevink appeals the superior court's child custody determination awarding legal and primary physical custody of the parties' three children to Kimberly Borchgrevink. The case requires us to consider the adequacy of the court's findings and the supporting evidence. We affirm.

## II. FACTS AND PROCEEDINGS

Following a three-day trial the superior court granted a divorce to Rob Borchgrevink and Kimberly Borchgrevink and awarded legal and primary physical custody of their three minor children to Kimberly, subject to visitation with Rob. At the time of the trial, the two boys were nine and six, and the girl was three.

## III. DISCUSSION

Rob argues that (a) the trial court's findings concerning the suitability of the parties' respective residences and the nature and extent of domestic violence were clearly erroneous; (b) the trial court abused its discretion in awarding custody to the mother because it failed to consider all relevant statutory best interests criteria and allowed the domestic violence factor to outweigh all other factors; and (c) the trial court erroneously awarded legal and physical custody of the children to Kimberly.

■■■■ The superior court is vested with broad discretion in determining child custody. *Evans v. Evans*, 869 P.2d 478, 479 (Alaska 1994) (citation omitted). The superior court's custody determination will not be set aside unless the record shows that its controlling findings of fact are clearly erroneous or the court abused its discretion. *Id.* A finding of fact is clearly erroneous only when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake. *Money v. Money*, 852 P.2d 1158, 1161 (Alaska 1993). An abuse of discretion has occurred if the superior court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others. *McDanold v. McDanold*, 718 P.2d 467, 468 (Alaska 1986).

### A. Suitability of Residences

■■■■ The trial court made the following finding regarding the suitability of the parties' residences:

There was testimony by several witnesses that the residences of both parties were inadequate in certain respects and not always neat and clean, especially the home of [Kimberly]. [Kimberly] was described, even by members of her family, as being a poor housekeeper. Nevertheless, the Court finds that the condition of the residences of both parties do not represent a risk to the health and welfare of the children.

Passages in the trial testimony of Rob Borchgrevink, Susan Moore (Kimberly's aunt), and Ronald Sliger (Rob's stepfather) supported this finding. The trial court did not clearly err in making this finding.

### B. Domestic Violence

The trial court made the following finding:

There was testimony by [Rob] that [Kimberly] verbally abused [Rob] but the evidence from [Kimberly] and other witnesses supports the finding that [Rob], commencing early in the marriage and up to the time of separation, engaged in a systematic course of conduct, resulting in the intimidation of [Kimberly] through coercion and threats and most significantly, physical abuse.

Rob argues that this finding was also clearly erroneous.

■■■■ Having reviewed the record evidence, we conclude that the trial court did not clearly err. There was substantial evidence of domestic violence, and the trial court was in the best position to assess the credibility of Rob, Kimberly, and other witnesses. *See* Alaska R. Civ. P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").

Although it was not necessary that Kimberly's testimony be corroborated, the record does contain evidence, including that of Susan Moore, and Tina Kivi, Kimberly's best friend, which corroborates aspects of Kimberly's testimony concerning domestic violence.

The court also found that Rob "continues, even after separation, to engage in 'controlling activities.'" Rob argues that this finding was also clearly erroneous. The record contains substantial evidence that Rob en-

gaged in post-separation controlling activities.

## C. *Sufficiency of Superior Court's Findings and Conclusions*

The trial court made the following findings of fact and conclusions of law relevant to the custody determination [1]:

### FINDINGS OF FACTS

. . . .

9. By far the most significant issue concerned the legal and physical custody of the three children of the parties. Following the separation of the parties Kimberly sought and received a domestic violence restraining order which was subsequently modified on several occasions resulting eventually in each party being awarded interim custody of the children on alternating weeks. A custody investigator appointed by the Court filed a report which, amongst other things, recommended that this custody arrangement be kept in place unless "... at a future date it is determined through counseling or some other neutral means that the children are being negatively impacted by the week on/week off schedule" other recommendations included:

a. The children be assessed for counseling needs. In the event it is determined that the children are in need of counseling, neither parent will participate in or interfere in that counseling unless invited to do so by the therapist.

b. Kimberly and Rob Borchgrevink be required to enroll in and successfully complete a six to eight week parenting class within three months of any final ruling in this matter.

c. Neither parent is to disparage the other in front of the children.

d. In the event either parent requires babysitting services for more than a four hour period, the other will be given first option to care for the children.

e. Both parents will keep the other fully informed of the children's ongoing medical and educational needs.

f. If either parent is cited for being under the influence of alcohol and/or drugs while transporting the children, that parent should be required to undergo random urinalysis testing three times per month for a period of four months. They should additionally be required to be assessed for substance abuse issues and required to follow any recommendations forthcoming from such an assessment.

g. Neither parent or their partners or relatives will use corporal punishment on the children.

10. Substantial domestic violence occurred during the marriage of the parties. The marriage was strained from the beginning. Kimberly testified that she was prohibited from doing many things, such as developing relationships outside the home, visiting her brother in his house, or engaging in other activities without prior permission from Rob. Verbal abuse from Rob started in approximately 1987 and escalated thereafter to hitting and other forms of physical abuse, such as punching in the face, vehicular assault, kicking, slapping, and, at least on one occasion, by dragging Kimberly by the hair through the trailer park where the parties were at one time residing. There was testimony by Rob that Kimberly verbally abused Rob but the evidence from Kimberly and other witnesses supports the finding that Rob, commencing early in the marriage and up to the time of separation, engaged in a systematic course of conduct, resulting in the intimidation of Kimberly through coercion and threats and most significantly, physical abuse. The effect of this type of behavior upon a typical "victim" was particularly well described by JoAnne Johnston in her testimony and by reference to the behavior and its consequences reflected in Kimberly's exhibit 19, the power and control wheel. Rob continues, even after separation, to engage in "controlling activities." For example, Rob refused to communicate directly with Kimberly unless his attorney was present and insisted that all information concerning the children's progress

---

**1.** The parties' names have been substituted for "plaintiff" and "defendant."

while they were attending daycare during his week of custody be communicated only to Rob. Rob claims that his refusal to meet with Kimberly without a third party present was to eliminate the opportunity for Kimberly to make unsubstantiated claims of domestic violence. While this may be, at first glance, a reasonable concern the Court finds that the threat of such an occurrence is far out weighed by the benefits to be derived in the establishment of communication on a one to one basis between the parties concerning the children.

11. Unfortunately, much of the assaultive behavior, including verbal abuse, was witnessed by the children, especially the two older boys. It most often occurred when Rob was drinking and on those occasions, the children would remove themselves from the vicinity of their father and hide as best they could from his anger. Although the assaultive behavior of Rob ceased after separation the domestic violence as that term is understood in the broadest sense continued in various subtle ways, examples of which are reflected above. The domestic violence witnessed by the children has resulted in the older [boys'] identification with Rob who is perceived as the "power" parent. For this reason, expressions of preference by the two boys (even aside from the issue of their tender age) to Dr. Dinius, the parents of Rob, Rob, Rob's sister, or Lisa Turner, are of little assistance to the Court in determining legal and physical custody.

12. There was testimony by several witnesses that the residences of both parties were inadequate in certain respects and not always neat and clean, especially the home of Kimberly. Kimberly was described, even by members of her family, as being a poor housekeeper. Nevertheless, the Court finds that the condition of the residences of both parties do not represent a risk to the health and welfare of the children.

13. Both parents were, at the time of separation, in need of developing enhanced parenting skills. Rob was in need in developing anger management skills. Both parties have worked hard since separation

to enhance their parenting skills and Rob, since his arrest in Wrangell, for assaulting Kimberly has attended and successfully completed an anger management program. Both parties have made substantial progress in these areas. Still Rob minimizes the nature and extent of his involvement in domestic violence and has exhibited little "self realization" of the effect of this behavior on Kimberly and his children. One consequence of this minimization manifests itself in Rob's failure to take responsibility for his past action and recognition of those changes necessary in his conduct to the establishment of a relationship with Kimberly that allows her to meaningfully contribute to those day to day decisions necessary to the welfare of the children as she is fully capable of doing, if permitted by Rob, assuming Rob was awarded legal and physical custody of the children. On the other hand, Kimberly must learn to minimize involvement of the children in the dispute between [her] and Rob. Both parties have disparaged the other in front of the children. Both parties testified and the Court agrees that the children have been negatively impacted by the week on/week off schedule.

14. As both parties apparently agree, it is in the best interest of the children that one parent have legal and physical custody of the children subject to liberal visitation rights in the non-custodial parent. Rob would be willing to preserve the "status quo" if he were not to be awarded legal and physical custody of the children. On the other hand Kimberly was willing to sacrifice her status as a parent having joint legal and physical custody in favor of legal and physical custody in a single parent even if it meant that legal and physical custody was awarded to Rob because she believes, and the Court agrees, legal and physical custody in one parent is necessary to the creation of a stable environment for the children under the circumstances and would be in their best interests. Neither party has suggested that separating the children would be appropriate.

15. The maintenance of a relationship between the Grandparents of the children,

especially the Mother and Step–Father of Rob (and other members of the extended family of both parties) is important to the well being of the children and is in their best interest that the Grandparents be given ample opportunity for visitation.

16. Kimberly is unemployed and without the resources necessary at this time to contribute meaningfully to the support of the children or to pay for the evaluation and counseling, if necessary, of the children. Rob is employed at Dukowitz Machine as a roustabout with a net income of approximately $1,600 a month.

. . . .

## CONCLUSIONS OF LAW

. . . .

4. Legal and primary physical custody of the three minor children of the parties is awarded to Kimberly, subject however to liberal rights of visitation with Rob and Rob's parents which contemplates two weekends per month, unless otherwise agreed, commencing at 6:00 p.m. on Friday evening and ending at 7:00 p.m. on Sunday evening and two months for all three children during each summer. Rob will be responsible for picking up and dropping off the children for each period of visitation. Rob will be entitled to custody of the children on alternating Thanksgiving and Christmas holidays and during each Spring vacation. Kimberly will be entitled to custody for the Thanksgiving holiday in 1996. Rob will be entitled to custody during the Christmas holiday in 1996.

5. Recommendations "a" through "e" and "g" of the child investigator reflected in paragraph 9 of the Findings of Fact are incorporated herein by reference and made a part hereof.

Rob argues that undue weight was given to the domestic violence factor, and that the findings were insufficient for adequate appellate review.

We review alleged inadequacy of a trial court's fact findings to determine whether they give a clear indication of the factors considered important by the trial court or allow us to determine from the record what considerations were involved. *Cf. Bird v. Starkey*, 914 P.2d 1246, 1249 n. 4 (Alaska 1996) (remanding for specific findings where the court ordered that the parties' child attend a particular elementary school "without any explanation or findings"). Citing previous Alaska opinions, we stated in that case that

> This line of cases requires the trial court to articulate the reasons for its holding where those reasons are not apparent from the record. Without any findings, the order becomes essentially unreviewable by this court. We thus find it necessary to remand for specific findings as to where Justin should attend school and why.

*Id.* at 1249 (footnotes omitted).[2]

In the present case, the trial court discussed the pertinent statutory factors and implicitly found that the children's best interests required their placement with their mother. The trial court could have explained more thoroughly the present impact of past domestic violence and past and continued controlling behavior on the parties' present relationships with their children. It also could have elaborated on the effect of this behavior on the children's best interests. We nonetheless conclude that the trial court's findings in this regard were adequate to reveal its reasoning process. The findings provide a "clear indication of the factors which the superior court considered important in exercising its discretion." *Id.* at 1249 n. 4. Although the court did not expressly

---

**2.** In *Bird* we explained:

> The findings need not be extensive, but must either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved. *See Julsen v. Julsen*, 741 P.2d 642, 649 n. 10 (Alaska 1987) (rejecting need for express tally of all statutory factors where record re-

flects careful scrutiny by superior court); *McClain v. McClain*, 716 P.2d 381, 384–85 (Alaska 1986) (holding lack of specific findings under statute not necessarily fatal to initial custody order where reviewing court can glean factors from record to support more general findings).

*Bird v. Starkey*, 914 P.2d 1246, 1249 n. 4 (Alaska 1996).

cite AS 25.24.150(c), it addressed the statutory factors that were, in context of the record in this case, pertinent and potentially determinative. There was no significant dispute about most of the statutory factors, both with respect to what the pertinent facts were, and with respect to how those factors favored awarding custody to one parent or the other.

Thus, there was no substantive dispute about the physical, emotional, mental, religious, and social needs of the children. AS 25.24.150(c)(1). This statutory factor favored neither parent.

With respect to the capability and desire of the parents to meet the children's needs, *see* AS 25.24.150(c)(2), there was no evidence either parent was significantly superior to the other; each had different strengths and there was evidence each was genuinely trying to deal with the children's needs, particularly those of the youngest boy. This evidence was largely in balance. The court expressly recognized that both parties had "worked hard since separation to enhance their parenting skills ... [and had] made substantial progress."

There was a dispute about whether a given child might favor placement with a particular parent. A child's preference is a statutory factor "if the child is of sufficient age and capacity to form a preference." AS 25.24.150(c)(3). The oldest child, however, was only nine years of age, and the court discounted any expressions of preference as being of "little assistance" in determining custody. The court thus expressly considered the preference factor and decided, for reasons that were not clearly erroneous, not to rely on that factor.

■ The love and affection existing between the children and each parent is also a statutory factor. AS 25.24.150(c)(4). The court did not discuss that factor, but it was undisputed that this factor favored neither party. Rob's attorney asserted in final argument: "I don't think that either party has ever said that the other parent did not love these children, and it has certainly never been our position that Kimberly did not love her children or that they did not love her ...." There was no need to address this factor because it was neutral.

■ The length of time the children had lived in a stable, satisfactory environment, and the need for continuity, is also a statutory factor. AS 25.24.150(c)(5). Both parents wanted to end the week on/week off custody schedule followed for the prior two years. The court expressly found that "legal and physical custody in one parent is necessary to the creation of a stable environment for the children under the circumstances and would be in their best interests." The court determined that the status quo had "negatively impacted" the children. The court adequately addressed the stability and continuity factor.

■ There was some inconclusive evidence regarding possible substance abuse by each parent, but that evidence did not clearly favor Rob. This evidence was sufficiently inconclusive that there was no reason for the court to address this statutory factor. AS 25.24.150(c)(8).

Thus, some of the statutory factors were expressly addressed by the trial court and others were not in genuine dispute and did not favor Rob. The trial court expressly addressed the two remaining statutory factors.

■ The first relates to the desire and ability of each parent to allow an open and loving frequent relationship between the children and the other parent. AS 25.24.150(c)(6). The last four sentences of Finding 13 address this factor generally. The court noted that Rob has failed to make changes in his conduct necessary "to the establishment of a relationship with [Kimberly] that allows her to meaningfully contribute to those day to day decisions necessary to the welfare of the children as she is fully capable of doing, if permitted by [Rob], assuming [Rob] was awarded legal and physical custody of the children." This finding clearly disfavors Rob. The court then noted deficiencies in Kimberly's conduct and found that both parties had disparaged the other in front of the children. The court elsewhere discussed Rob's refusal to communicate with Kimberly, a finding that disfavored Rob on this factor. These findings reflect adequate consideration of this factor.

The trial court placed heavy emphasis on the remaining statutory factor: "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents." AS 25.24.150(c)(7). There was no genuine dispute that Rob had physically abused Kimberly prior to separation, although there was a dispute about the number of incidents and Rob's willingness to admit the extent of that abuse. In considering this statutory factor, the court declined to define domestic violence narrowly. It found that

> Although the assaultive behavior of [Rob] ceased after separation the domestic violence as that term is understood in the broadest sense continued in various subtle ways, examples of which are reflected above. The domestic violence witnessed by the children has resulted in the older [boys'] identification with [Rob] who is perceived as the "power" parent.

The court elsewhere observed that Rob "continues, even after separation, to engage in 'controlling activities.'" The court approvingly referred to trial evidence of a "power and control wheel," and appears to have accepted opinion evidence offered by an expert in domestic violence that controlling behavior can constitute domestic violence.

The dissent accurately identifies four purposes served by the requirement that trial courts make findings in judge-tried cases, and concluded that three are relevant to this case. Dissent at 142. The dissent concludes that the findings are inadequate and would vacate the judgment and remand for additional fact finding.

In our view, the trial court's findings satisfied the purposes noted by the dissent. First, the findings are sufficiently extensive that it appears they "aid[ed] the trial judge's analytical process." *Matter of D.C.*, 715 P.2d 1, 1 (Alaska 1986); Dissent at 142. Although the findings could have been more explicit, the court conducted the necessary analysis in determining the best interests of the children. That analysis led the trial court to focus on the domestic violence factor which was the most contentious trial issue and the factor the court felt was critical. The parties' trial briefs focused upon the child custo-

dy factors listed in AS 25.24.150(c), and set the context for the trial court's analysis and determination. At the outset of his direct examination Rob's lawyer took Rob through each of the statutory criteria. Likewise, the parties' final arguments centered on the statutory factors and the children's best interests. In this context, the findings reveal that the court was analyzing the pertinent statutory factors.

The trial court's findings were also sufficient to satisfy the second purpose identified by the dissent—to aid appellate review. Dissent at 142. A trial court's factual findings need not be extensive, but must either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved. *Bird*, 914 P.2d at 1249 n. 4; *see also Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997) ("While trial courts are encouraged to state all findings in their written orders, they are not required to do so as long as the basis for their decisions is clear from the record and thus susceptible to review.").

The findings also were adequate to satisfy the third purpose identified by the dissent—enabling "the defeated party to determine whether the case presents a question worthy of consideration by the appellate court." Dissent at 142. Rob argues that the trial court's findings make it impossible to determine the basis of that court's decision. Nevertheless, Rob appealed from the superior court's determination, and focused his briefing on the trial court's findings bearing on whether Rob's controlling behavior and past domestic violence would have a continuing adverse effect on the children's best interests. Those were the issues in dispute, and the trial court made findings on them. The trial court's findings did not prevent Rob from deciding whether to appeal. Nor did they prevent him from substantively addressing the domestic violence issue and arguing that the findings were neither supported by evidence nor indicative of his present fitness to be the custodian.

We prefer that superior courts specifically address the statutory factors detailed in AS 25.24.150(c), and make explicit "ultimate"

findings that the best interests of the children require the custodial disposition reached. Detailed findings clearly advance the purposes identified by the dissent. Moreover, they reduce or avoid appellate attacks on any perceived insufficiency of the findings, and allow us to focus on more substantive issues. Nevertheless, the findings here were not so inadequate that they require that the judgment be vacated and the case remanded.

■ Having considered the sufficiency of the findings, we turn to Rob's assertion that the findings were not supported by the evidence. We conclude that the record supports those findings, including those which the trial court considered dispositive of the custody issue. The record clearly establishes that Rob engaged in domestic violence before the parties separated by physically abusing and threatening Kimberly on a number of occasions. Indeed, Rob does not dispute that he physically abused Kimberly before they separated, even though the parties disagree about the extent of that abuse. Although it is undisputed that the physical abuse ended after Rob and Kimberly separated, there was evidence that domestic violence is not limited to physical assault. JoAnne Johnston, qualified by the court as an expert in domestic violence, testified that it is a common misconception that "domestic violence is an issue of anger." She also testified "that domestic violence is when a person uses any tool available to take away the freedom of another person, not just anger. In fact it may be being very nice, but the purpose or the motivation is centered around power and control as opposed to anger." Ms. Johnston testified that children are affected by the exercise of power and control and abusive behaviors because they may connect themselves with the person who has the power.

> Kids are fearful, and so they respond and try and attach with the person with whom there's a sense of needing to feel safe. Well, if they bond or show themselves to be most attached to the person who's using power and control and abusive behaviors, they then perceive oftentimes that they can be safe, because they're connected with the person who has all the power.

She testified that the anger management program Rob enrolled in may only have focused upon controlling his anger. Nevertheless, she stated that "if we ... [do] not identify other forms of abuse [such as the abuse of power and control], but just the abuse of anger, then we've not addressed the overall issue." There was also evidence that the children's behavior had worsened since separation, and that the older boy had become more disrespectful of Kimberly. Witnesses testified that after separation the children had failed to respect Kimberly's authority as a parent on occasion. There was evidence that Rob had engaged in controlling behavior after separation. Rob denied to a counselor that he had engaged in controlling behavior, but asserted that Kimberly had been controlling in a number of areas. It appeared to Ms. Johnston that Rob had minimized his own fault and responsibility. The record supports the finding that Rob continues to minimize the extent and nature of his behavior; the trial court could have readily discounted or rejected his testimony minimizing his domestic violence.

Although the children had not witnessed any physical violence between Rob and Kimberly since their parents separated, the deleterious impact on children of witnessing domestic violence is widely recognized. *See, e.g., Custody of Vaughn*, 422 Mass. 590, 664 N.E.2d 434, 439 (1996) ("It is well documented that witnessing domestic violence ... has a profound impact on children. There are significant reported psychological problems in children who witness domestic violence, especially during important developmental stages.") (citations omitted). Furthermore, social science studies have noted that even if the physical violence between the parties has ceased, the abusive ex-spouse may continue to engage in controlling behaviors that adversely affect the children. In one such study, researchers found:

> Perpetrators of ... [ongoing or episodic] domestic violence tend to have a very poor ability to differentiate their needs from those of their children, or to appreciate the impact of their violent behavior upon their children. Because of their need to control others, their low stress tolerance and will-

ingness to rely upon physical coercion, these perpetrators are at elevated risk of eventually generalizing their violence and control to their children. Following a separation, they are at elevated risk of using the children to validate their own view of the separated partner and the relationship, or using the children as a method of exerting control over or punishing the separated partner.

Phyllis E. Federico & Dr. Robert Kinscherff, *Custody of Vaughn: Impact of Domestic Violence on Child Custody: Children Are No Longer the Forgotten Victims,* 40 Boston B.J. 8, 22 (1996). The trial court did not impermissibly punish Rob for past domestic violence, but appropriately considered Rob's proven past domestic violence and his current behavior in the context of the present impact on the children and their relationships with their parents.

We consequently hold that the evidence supported the trial court's critical findings on the custody issue.

The dissent suggests that we are effectively changing the standard of review from one which asks whether the findings made are supported by the evidence to one which asks whether any evidence supports the judgment. Dissent at 144. We disclaim any change in the standard of review. The superior court addressed the pertinent statutory factors in its findings. The court did not expressly find that it was in the children's best interests to be placed with Kimberly, but given that the court addressed each pertinent statutory factor, and that the parties had briefed and argued the statutory factors and the best interests analysis, we have no difficulty in ascertaining how the court resolved the custody issue and the precise reasons for that resolution. We have determined there was ample evidence in the record supporting those findings; although the evidence was in dispute, it was sufficient to justify the findings the trial court made on all of the disputed factors, including the two factors which the trial court finally determined were dispositive.

We have not applied a new standard of review.

### D. *Weight of Evidence*

Rob claims finally that the child custody award is contrary to the weight of the evidence at trial. Rob's interpretation of the evidence in light of the statutory factors is not supported by the record. Our review reveals that the statutory factors did not require a result other than the one reached by the trial court.

The trial court did not place undue weight on the domestic violence factor; it was this factor that most strongly weighed in favor of one parent and against the other, and the trial court did not inappropriately weigh that factor in comparison with other circumstances, which were largely in balance. *See McQuade v. McQuade,* 901 P.2d 421, 425 (Alaska 1995) (holding that the superior court did not abuse its discretion in concluding that, all else being equal, sibling bonds were the deciding factor in awarding custody to the mother). It is apparent from the trial court's findings that Rob's behavior and domestic violence were the controlling factors in the custody determination.

### IV. CONCLUSION

Because we conclude that the controlling factual findings are not clearly erroneous and because the record does not reveal an abuse of discretion, *cf. Vachon v. Pugliese,* 931 P.2d 371, 375 (Alaska 1996) (noting that we will only reverse a trial court's resolution of custody issues where we are convinced that the trial court abused its discretion or if factual findings are clearly erroneous), we AFFIRM.[3]

MATTHEWS, J., dissents.

MATTHEWS, Justice, dissenting.

In cases tried to the court without a jury, the court is required to "find the facts specially and state separately its conclusions of law thereon." Alaska R. Civ. P. 52(a). Child

---

3. Rob argues only that legal and primary physical custody should have been awarded to him; he does not claim that the trial court should have given him greater visitation privileges with the children.

custody questions are to be determined "in accordance with the best interests of the child...."[1] What the best interests of the children require is thus the ultimate finding to be made by a trial court in a child custody case. In reaching the ultimate finding, the trial court must consider a number of statutorily mandated factors, and findings concerning relevant statutory factors must be made. Finally, findings relating the relevant statutory factors to the court's ultimate best interests finding should be made. Such findings integrate the relevant statutory factors into the court's best interests determination and explain why the court has decided that the best interests of the children are served by the custody determination which it has made.

In the present case, the trial court did not make an ultimate finding that it is in the best interests of the children that Kimberly be their primary custodian rather than Rob, and did not make integrative findings explaining how the relevant statutory factors would justify a determination that it is in the best interests of the children to be in the primary custody of Kimberly.

We have identified a number of purposes served by the requirement that trial courts make findings in judge-tried cases. This requirement (1) "aids the trial judge's analytical process"; (2) "may be relevant for collateral estoppel purposes"; (3) "aids the appellate court on review"; and (4) enables "the defeated party to determine whether the case presents a question worthy of consideration by the appellate court."[2] Of these, the first, third and fourth purposes are relevant here, and more should be said about them.

Written findings demonstrate that the trial court has asked and answered the questions that the law requires be asked and answered. In this way the findings facilitate appellate review. The absence of required findings indicates that the trial court has made a mistake of some sort. Required findings on a statutory standard such as children's best interests may not have been made because the trial court may not have realized that the standard controlled the decision, or required findings may not have been made through oversight on the part of the trial court. It is also possible that required findings were made by the trial court mentally, but were not set down in writing.

Written findings also help the trial judge to reach an appropriate decision. They require that the controlling question be explicitly asked and answered and thus exert a discipline which should help to ensure that the decision is both logical and in compliance with legal requirements. This value exists independent of appellate review.

Finally, dispensing with the findings requirement necessarily changes the standard of review. Findings are reviewed for factual sufficiency—that is they are not to be overturned on appeal unless they are clearly er-

---

1.  AS 25.24.150(c) and (d) provide:
    (c) The court shall determine custody in accordance with the best interests of the child under AS 25.20.060—25.20.130. In determining the best interests of the child the court shall consider
    (1) the physical, emotional, mental, religious, and social needs of the child;
    (2) the capability and desire of each parent to meet these needs;
    (3) the child's preference if the child is of sufficient age and capacity to form a preference;
    (4) the love and affection existing between the child and each parent;
    (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
    (6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;
    (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
    (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
    (9) other factors that the court considers pertinent.
    (d) In awarding custody the court may consider only those facts that directly affect the well-being of the child.

2.  The first three purposes are taken from *Matter of D.C.*, 715 P.2d 1 (Alaska 1986), based on *Merrill v. Merrill*, 368 P.2d 546 (Alaska 1962). The fourth factor was identified in *Rogge v. Weaver*, 368 P.2d 810, 814 n. 7 (Alaska 1962).

roneous. Alaska R. Civ. P. 52(a). Obviously, findings which are not made cannot be reviewed under this or any other standard. Judgments without findings—assuming they are to be reviewed rather than remanded for findings—can be reviewed. Judgments on the general verdict of a jury are examples. Such judgments are upheld if they are supportable under any set of facts in evidence. Note the difference between this standard and the standard applicable to findings made by a trial judge. In the judge-tried case it is for the trial judge to select among disputed facts. On appeal, only those disputed facts found by the trial judge are tested for factual sufficiency. In a jury trial, on the other hand, all the evidence must be reviewed to see if there is any evidentiary support for the judgment. The assumption of the appellate court is that all disputes concerning the facts have been resolved by the jury in a way which supports the judgment. This may not be what the jury actually did, but it is a necessary assumption given the impenetrability of jury deliberations. In a judge-tried case this assumption is not necessary, for the trial court's findings should set out what has been found and what has been relied on. Using the assumption assigns the fact-finding responsibility of the trial court to the appellate court. In other words, the role of the appellate court in the judge-tried case is to review only what the trial court has found, not what the trial court might have found. Similarly, the appellant's burden in the judge-tried case is to show that what was found was clearly erroneous, not that the judgment was unsupportable under any possible set of findings that might have been made.

Turning to this case, there is no demonstration that the trial court addressed the question as to whether the children's best interests would be better served by having Kimberly rather than Rob as primary custodian. Based on the set of findings that we have before us we can only speculate as to whether the trial court actually decided this question.[3] Similarly, requiring the trial court to make findings as to the connection, if any, between Rob's past physical abuse of Kimberly, and the best interests of the children, would also focus the attention of the trial court on this critical question.[4] Again, we can only speculate as to whether the trial court mentally made a finding on this question, and, if so, as to what it was.

Although no witness testified that the children's interest will be better served in the primary custody of Kimberly rather than Rob because of Rob's past domestic violence and controlling behavior, I assume that the trial court could have made such a finding based on a chain of inferences drawn from evidence which was partly disputed. Should the trial court then be affirmed on the basis of a finding which it might have made, but did not? In my view, the answer is no. Doing so is to use the jury trial standard of review—the appellate court affirms because there is evidence supporting the judgment. As noted, this effectively takes from the trial court the responsibility of selecting from among competing sets of facts which are supportable based on the evidence.

This court has previously reversed and remanded for further findings cases where

---

3. It is, of course, possible to say that the court implicitly found that it was in the best interests of the children to be in the primary custody of the mother because the court concluded that the mother should be the primary custodian. The reasoning underlying such an implication is that since the legal conclusion—that the mother be primary custodian—is dependent on an ultimate finding—that it is in the best interests of the children that the mother be primary custodian—it follows that the ultimate finding was made, otherwise the trial court erred. However, this type of implication, based on the presumption of judicial regularity, subverts the findings requirement by assuming rather than requiring compliance with the findings rule.

4. In defense of the trial court I should say that the trial court's failure to draw a connection between the father's prior history of domestic violence and the best interests question mirrored the evidence, which also contained no clear connection in this respect. The only expert who testified to what the future custodial arrangement should be was the state custody investigator who explained her report which recommended that the parties' present alternating week custody arrangement be continued. This arrangement had been in effect for two years, as of the time of trial, without violent incidents.

trial courts have not made ultimate findings,[5] and cases where trial courts have not made integrative findings.[6] Here the trial court made neither ultimate findings nor integrative findings.

These failures cast doubt as to whether the court focused on the best interests of the children in awarding custody to the mother rather than the father, for if the court had decided this question it is reasonable to suppose that findings addressing it would have been made. Further, the lack of integrative findings leads one to wonder whether the court thought that it was sufficient merely to identify the more virtuous of the parents in an abstract sense, rather than to decide which parent would be the better custodian. On review we can only speculate as to whether the trial court made the findings which the law requires.

Finally, insofar as today's opinion has inferred integrative findings based on the conclusion reached by the trial court, the opinion has effectively changed the standard of review from one which asks whether findings which have been made are supported by the evidence to one which asks whether there is any evidence which can support the judgment. This change bypasses the fact selection role of the trial court.

For these reasons I would vacate the judgment and remand this case for further findings.

---

**5.** See, e.g., Hakas v. Bergenthal, 843 P.2d 642, 643–44 (Alaska 1992); Matter of D.C., 715 P.2d 1, 1 (Alaska 1986).

**6.** See, e.g., Bird v. Starkey, 914 P.2d 1246, 1248–49 (Alaska 1996)(reversal for failure to make findings as to why attendance at a particular school in child's best interests); Lowdermilk v. Lowdermilk, 825 P.2d 874, 879 (Alaska 1992)(trial court abused its discretion in failing to make findings regarding a statutorily mandated factor at issue in the case; to make findings regarding the effect of that factor on the parties; and to make findings regarding that factor's bearing on the ultimate issue in the case); Morel v. Morel, 647 P.2d 605, 607–08 (Alaska 1982) (reversal for failure to apply facts of case to statutory factors and make findings regarding the application of those facts).