NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PAUL T. DUNHAM, | ) | |
| | ) | Supreme Court No. S-17979 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-19-09860 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| KIANA A. JOHNSON, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1911 – August 10, 2022 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer Henderson, Judge.

Appearances: Kara A. Nyquist, Anchorage, for Appellant. Ryan R. Roley, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, and Borghesan, Justices. [Henderson, Justice, not participating.]

## I.  INTRODUCTION

A mother and father each sought primary physical custody of their nine-year-old son. Following a custody trial, the superior court decided that the child's best interests required that the mother, who lives in Oregon, have primary physical custody. The father appeals, arguing that the court failed to give proper weight to the child's need for stability and continuity, considered improper factors in its best interests analysis, erred in its discussion of the father's marijuana use and gave it too much weight, and

---

\*      Entered under Alaska Appellate Rule 214.

failed to properly weigh the mother's harmful conduct. We conclude that the superior court's findings are insufficient to explain its custody award; we therefore vacate the award and remand for reconsideration. At the same time, however, and to eliminate the need for further litigation of the issues on remand, we conclude that the superior court did not err or abuse its discretion in its analysis of most of the best interests factors.

## II. FACTS AND PROCEEDINGS

### A. Facts

Paul Dunham and Kiana Johnson had a son in January 2013. They lived together in Alaska for the first two years of the child's life but separated in 2015. Kiana and the child moved in with Paul's parents, and Paul visited regularly.

In 2017 Kiana moved to Oregon, and the child remained in Alaska with Paul. There was no formal visitation schedule, but Kiana visited the child in Alaska and he visited her in Oregon on multiple occasions. In 2019, soon after the child started first grade, Kiana's aunt Lucy accompanied the child to Oregon for a few days' visit. Just before their return flight, Kiana informed Lucy that she would be keeping the child with her. She had registered the child for school in Oregon without telling Paul or Lucy.

Paul filed an expedited motion for interim custody and the child's return to Alaska; he also sought an order granting him primary physical custody. The court held a hearing, heard testimony from both parents, and ordered that the child be returned to Paul's custody. The child traveled back to Alaska and resumed school in Anchorage.

### B. Proceedings

The superior court held a custody trial over several months. The court heard testimony from Paul, Kiana, several other family members, and Kiana's Oregon neighbor. Much of the testimony focused on Paul's marijuana use, but other testimony addressed the child's life in Alaska and what it would look like if he were to live with Kiana in Oregon instead.

Paul testified that he used marijuana regularly but never around his son; he testified that he kept his marijuana in a locked cabinet where the child could not access it. He admitted that for two months in 2017 he was growing four marijuana plants in the home he shared with the child, but he testified that the plants were kept in a locked room. Lucy testified, however, that the child had shown her the marijuana plants. And although Paul testified that Lucy had never addressed his marijuana use with him, Lucy testified that she believed his marijuana use was a problem and that she had talked to him about it.

Paul testified that he developed a strong routine with his son after Kiana moved to Oregon. Paul testified that the child had participated in soccer, gymnastics, and a reading program and was considering a dance program as well. He testified that the child did well in school and spent a lot of time with extended family and friends. Lucy testified that she took care of the child every other weekend and about half of the summer. Paul's girlfriend, Billie, and his father, Gay, both testified about the important role the child's extended family played in his life; Billie, Gay, and Lucy all testified that Paul was a good father.

Kiana testified that she always had envisioned that her son would eventually move to Oregon and live with her, and Lucy confirmed that this was "everybody's" expectation. Kiana explained that she had arranged for her neighbor, Dolly, to watch the child while Kiana was at work and that her father, who lived eight hours away in Spokane, was also available to help if needed. Dolly added that the child had friends at Kiana's apartment complex and "did really well" with Kiana's work schedule. Lucy, Kiana's father, and Dolly all testified that Kiana was a good mother.

The court issued an oral decision and explained it on the record. It first remarked that the decision was difficult because "both parties [were] quite capable as parents and [had] real strengths." The court then went through the statutory factors

courts are required to consider when "determining the best interests of the child."[1]  It found that (1) the child's needs were "fairly typical for a kid[] his age"; (2) although both parents had made significant mistakes — namely Kiana's failure to return the child to Alaska at the end of the 2019 visit and Paul's lack of candor about the marijuana in his home — both were capable of meeting the child's needs; (3) the child was too young to express a preference to live with one parent or the other; (4) the child had "great love and affection for both of his parents and both of his parents [had] great love and affection for him"; (5) the child had stability living with Paul in Alaska, especially because of his supportive family network, and although this factor favored Paul, the child could develop an equivalent level of stability living with Kiana in Oregon; (6) Paul and Kiana were "capable of communicating and making joint decisions"; and (7) there were no substance abuse or domestic violence concerns.  The court also found, based on testimony by both Kiana and Lucy, that "the overall plan of [the] parties . . . about what was going to happen after [Kiana] moved to Oregon" was that the child "would be with [Paul] . . . . for a year" — which "grew to be a longer period of time" — but that the child "would eventually go to Oregon to be with [Kiana]."  The court granted Paul and Kiana joint legal custody and Kiana primary physical custody, with Paul having physical custody during the child's summer breaks.

Paul appeals.

## III.    STANDARD OF REVIEW

"The superior court is vested with broad discretion in determining child

---

[1]     *See* AS 25.24.150(c) (listing eight factors "the court shall consider" "[i]n determining the best interests of the child," along with "other factors that the court considers pertinent").

custody."[2]  A custody decision "will not be set aside unless the record shows that its controlling findings of fact are clearly erroneous or the court abused its discretion."[3]

Findings of fact are "clearly erroneous only when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[4]  "[W]e grant 'particular deference to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence.' "[5]  "[T]he deference accorded to a superior court's factual findings is particularly appropriate in close cases."[6]

"An abuse of discretion has occurred if the superior court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[7]  But the court " 'has considerable discretion in determining the importance of each statutory factor in the context of a specific case and is not required

---

[2]    *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997).

[3]    *Id.*

[4]    *Id.*

[5]    *Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010) (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008)).

[6]    *Charles S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 780, 788 (Alaska 2019) (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1260 (Alaska 2010)).

[7]    *Borchgrevink,* 941 P.2d at 134.

to weigh the factors equally.' "[8]

## IV. DISCUSSION

### A. The Superior Court's Findings Are Insufficient For Our Review Because They Do Not Make Clear The Basis For Its Decision.

"In reaching a final child custody determination, 'a trial court is required to make findings on the various statutory factors which are sufficient to make the basis of its decision susceptible to review.' "[9] The superior court in this case made findings on all the statutory factors. However, its findings — which were either neutral or, in one case, may have favored Paul — do not explain its resulting award of primary physical custody to Kiana, meaning that its decision is not susceptible to review. We are therefore obliged to vacate the custody order and remand for reconsideration.

The court carefully addressed in detail the statutory best interests factors in its oral decision on the record. First, it found that the child's "needs [were] fairly typical for a kid[] his age" except for "maybe slightly greater needs in regard to potential ADHD and/or potential allergies."[10] This factor favored neither parent. Next the court addressed "the parties' respective abilities to . . . recognize and meet [the child's] needs." The court found that both parents were "able to, overall, recognize and meet [the child's] needs" but that both had "made significant mistakes in parenting . . . , particularly

---

[8]     *Georgette S.B. v. Scott B.*, 433 P.3d 1165, 1171 (Alaska 2018) (quoting *Judd v. Burns*, 397 P.3d 331, 339-40 (Alaska 2017)).

[9]     *Smith v. Weekley*, 73 P.3d 1219, 1222 (Alaska 2003) (quoting *Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997)).

[10]     *See* AS 25.24.150(c)(1) (requiring consideration of "the physical, emotional, mental, religious, and social needs of the child").

recently."[11]  Kiana's mistake was keeping the child in Oregon at the end of the 2019 visit, "a significant mistake" that "involved deceiving others [who] love and care for the" child and, more importantly, "really disrupted stability for the [child]."  Paul's mistake, according to the court, was his lack of candor "about the extent to which marijuana is a part of his life," including the extent of his use and the child's exposure to marijuana plants in his home.  The court found that Kiana had learned from her mistake and was "highly unlikely to ever venture into doing something like that again"; it made no similar finding about Paul.  But the court did not specifically weight this factor in either party's favor.  Rather, it concluded that "overall," Paul and Kiana were "two very capable parents who absolutely want the best for" their son.

The third statutory factor is "the child's preference if the child is of sufficient age and capacity to form a preference."[12]  Given the child's young age, the court did not take his preference into account, though observing that he probably preferred "just to have everyone together."  Fourth, the court found that the child had "great love and affection for both of his parents and both of his parents have great love and affection for him."[13]  Neither the third nor the fourth factor weighed in favor of one parent or the other.

The court then addressed the fifth statutory factor, "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining

---

[11]    *See* AS 25.24.150(c)(2) (requiring consideration of "the capability and desire of each parent to meet these needs").

[12]    AS 25.24.150(c)(3).

[13]    *See* AS 25.24.150(c)(4) (requiring consideration of "the love and affection existing between the child and each parent").

continuity."[14] The court found this to be "really a mixed factor." It recognized the "stability that [Paul] has provided for [the child] here in Alaska," which was "strengthened by the great support network and the family network that is here in Alaska surrounding [the child]."[15] But the court found that the child was likely to find stability with Kiana as well, explaining, "I really don't have doubt about [Kiana's] ability to provide a good, quality life that meets [the child's] needs in Oregon." The court decided that "this factor may weigh slightly in favor of [Paul]."

Finally, the court observed that there was no evidence of domestic violence[16] or substance abuse[17] "that impact[ed] the parenting of the parties." The court did not directly address one statutory factor, "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[18]

In sum, in the court's detailed analysis of the custody factors it considered relevant to its decision, it found all of them to be neutral — not weighted toward one parent or the other — except for the "stability and continuity" factor, which "may weigh

---

[14]     AS 25.24.150(c)(5).

[15]     Relevant to this factor, the court remarked that it was "hopeful that the parties would facilitate" the continued involvement of Lucy in the child's life, "because . . . that serves [the child's] best interests."

[16]     *See* AS 25.24.150(c)(7) (requiring consideration of "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents").

[17]     *See* AS 25.24.150(c)(8) (requiring consideration of "evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child").

[18]     AS 25.24.150(c)(6).

slightly" in favor of Paul. We must therefore look further if we are to discern the court's reasoning for awarding primary physical custody to Kiana instead.

The custody statute allows a court to also consider "other factors that the court considers pertinent."[19] One thing the superior court considered, and seemed to weigh heavily, was what it found to be "the overall plan of the parties surrounding [the child] about what was going to happen after [Kiana] moved to Oregon." The court found credible the testimony of both Kiana and Lucy "that it was the overall understanding of the parties that [the child] would be with [Paul] here in Alaska . . . initially for a year" but "would eventually go to Oregon to be with [Kiana]" once she had settled there. The court first addressed this plan in the context of the parents' respective abilities to meet their son's needs, perhaps — though this is not entirely clear from the court's discussion — as evidence that the parties recognized each other's parenting capabilities. The court raised it again in the context of the stability and continuity factor. After finding that the "factor may weigh slightly in favor of [Paul]," the court "[came] back to the finding that [it had] made that it was, overall, the parties' plan when [Kiana] moved to provide [Paul] this opportunity" to develop a close relationship with the child "for a period of time . . . before [the child] would move to Oregon, and be with [Kiana]." The court did not directly tie this finding to the stability and continuity factor, and there are different possible interpretations of its intent: it may have meant that requiring the parties to abide by a long-term plan was consistent with the concepts of stability and continuity, or it may have meant that *despite* the greater stability Paul was then providing, the parties had agreed on a different plan that necessarily controlled.

It is axiomatic that the superior court is not bound by the parties' custody

---

[19]     AS 25.24.150(c)(9).

agreement if the court finds that a different arrangement is in the child's best interests.[20] But the parties' agreement is not necessarily irrelevant. In *McClain*, for example, we held that a custody agreement, though later repudiated by one party, was properly considered in the superior court's custody analysis as evidence of the parents' ability to cooperate for the sake of their child.[21] Here, however, we cannot tell what the court intended by its repeated reference to the parties' long-term plan. It may be that the court saw the parties' commitment to that arrangement as outweighing what would otherwise be a custody outcome favoring Paul. This would be an improper reliance on the plan: "[W]hen a court recognizes or gives attention to [a custody] agreement, it does so not because the parties' compact binds the court, but for the light it sheds on the motives and dispositions of the parties."[22]

We recognize that the court found this to be a very close case, one in which "both parties are quite capable as parents and have real strengths as parents." In fact, the court prefaced its decision by advising the parties that it would likely approve any agreement they were able to reach "that differs from [the court's] decision"; the court felt "that the parties . . . . kn[ew] the situation, each other, and [the child] best, and truly want what's best for him." We recognize that in close cases such as this there is likely no wrong answer to the question of which parent should be awarded primary physical

---

[20] *See McClain v. McClain*, 716 P.2d 381, 385 (Alaska 1986) ("Trial courts, not parents, are the ultimate decision makers as to custody and are not bound by private agreements."); *see also Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1190 (Alaska 1987) (explaining that "the mere existence of [a] custody agreement" is not binding on the court, which "must 'independently determine what custody arrangement will best serve the child's interests' " (quoting *McClain*, 716 P.2d at 385)).

[21] 716 P.2d at 386.

[22] *Id.* (describing holding of *People ex rel. Wasserberger v. Wasserberger*, 345 N.Y.S.2d 46, 48 (N.Y. App. 1973), *aff'd*, 311 N.E.2d 651 (N.Y. 1974)).

custody. But whatever the court's answer, it must be based on a weighing of the relevant statutory best interests factors in such a way that allows for meaningful review. We therefore remand the custody order for the superior court's reconsideration and a clarification of the basis of its award.

**B.     The Court Did Not Err Or Abuse Its Discretion In Its Consideration Of Most Of The Best Interests Factors.**

Although we direct the superior court to reconsider its best interests analysis on remand, we affirm certain aspects of its decision, challenged on this appeal, in hopes that they will not need to be relitigated.

**1.     The superior court did not fail to give adequate consideration to the child's support system or religious needs.**

The superior court found the child's needs to be "fairly typical for a kid[] his age." Paul argues that the superior court failed to give adequate attention to two of the child's needs: "maintaining his familiar support connections" and his "religious needs." But maintaining a support system is part of the "typical" needs of a child, and the court discussed the importance of the child's support system at length when analyzing the stability and continuity factor.

As for religious needs, Paul asserts that in Alaska the child regularly attended church with his grandparents, a practice Kiana was unlikely to continue. But neither party highlighted this issue at trial. Paul did not mention religious needs in his trial brief, asserting generally that the child was "a typical six-year-old child in terms of his physical, emotional, mental, educational, and social needs." Paul's father testified that Paul "encouraged his mom and I to take [the child] every once in a while to church with us on Sunday"; Kiana's father testified that although she might not be "going to church weekly," he could "certainly see some spiritual development in [the child] through Kiana." Without evidence that the child's best interests required a particular

kind of religious upbringing, it was not the court's prerogative to favor one spiritual approach over the other.[23]  We see no abuse of discretion in the court's analysis of the child's needs.

> **2.  The superior court did not err by declining to apply "a symmetrical analysis" of the best interests factors.**

The *Moeller-Prokosch* standard requires that when a parent moves out of state and seeks custody of a child, the court must engage in "symmetric consideration of the consequences to [the child] both if [the parent] leaves with [the child] and if [the parent] leaves without [the child]."[24]  "We have stressed that a symmetrical analysis of the [stability and continuity] best interests factor is especially important and requires the court to consider both the emotional and geographic stability of the child."[25]

Paul argues that the court erred by failing to conduct this type of symmetrical best interests analysis.  But the *Moeller-Prokosch* standard and its "symmetric consideration test . . . . do[] not apply when the parents *already* live in separate locations at the time of the evidentiary hearing and the court hears evidence about the child's environment in both locations."[26]  *Moeller-Prokosch* requires a "what

---

[23]     *See Bonjour v. Bonjour*, 592 P.2d 1233, 1240 (Alaska 1979) (explaining that court, when weighing this custody factor, may consider religious "preference of a child mature enough to make a choice between a form of religion or the lack of it" and whether "particular religious practices or beliefs" threaten harm, but that court "may not substitute its own preferences, either for or against a particular type of religious observance").

[24]     *Moeller-Prokosch v. Prokosch*, 99 P.3d 531, 535-36 (Alaska 2004).

[25]     *Brett M. v. Amanda M.*, 445 P.3d 1005, 1009-10 (Alaska 2019).

[26]     *Pingree v. Cossette*, 424 P.3d 371, 385 (Alaska 2018) (emphasis in original).

if" analysis that attempts to predict the consequence of a contemplated change.[27] Kiana had lived in Oregon for two years before Paul sought custody, and testimony about the child's life in Alaska and his life in Oregon was a primary focus of the trial. The court was under no obligation to conduct the "symmetrical" analysis required by *Moeller-Prokosch*.

> **3.** **The superior court did not err or abuse its discretion in its consideration of Paul's marijuana use.**

As noted above, the superior court found that neither parent had a substance abuse problem that affected their ability to parent. Addressing Paul's marijuana use, which was the subject of much trial testimony, the court explained that its "concern really is not the use of marijuana" but rather its impression that Paul had not testified honestly "about the extent to which marijuana is a part of his life," Lucy's concerns about his marijuana use, and the child's exposure to marijuana plants.

Paul argues that the court's "finding that [the child] had been inappropriately exposed to marijuana" was unsupported by the evidence and given too much weight in the custody determination. He emphasizes the lack of evidence that the child was ever exposed to anything other than four plants and the lack of evidence that this exposure caused the child any harm.

But the court's expressed concern was not over the exposure, it was about what it perceived to be Paul's "lack of candor."[28] And ultimately this "lack of candor" was not a determinative factor in the court's decision; the court considered it when

---

[27]   *See* 99 P.3d at 535-36.

[28]   This finding had support in the inconsistencies between Lucy's and Paul's testimony. Paul testified that the marijuana plants were kept in a locked room where his son could not access them, but Lucy testified that the child showed them to her. Paul also testified that Lucy had never expressed concern about his marijuana use, but Lucy testified that she had spoken to him about it.

determining the capability of each parent to meet the child's needs and found that both parents are capable. We therefore conclude that the court did not err or abuse its discretion in its consideration of Paul's marijuana use.

> **4. The superior court did not err in determining that the parents have an equal capability and desire to meet their son's needs.**

The court considered "the capability and desire of each parent to meet [the child's] needs"[29] to be a "very important factor in" its decision. It found that although both Paul and Kiana "made significant mistakes in parenting," both had "real strengths" and were capable of meeting their son's needs. The court discussed these "mistakes" — Kiana's decision to keep the child in Oregon and Paul's "lack of candor" with the court on the marijuana issue.

Paul argues that "the court did not sufficiently consider the effect that several of Kiana's actions have had upon" the child. He relays his father's concern that the child "was devastated" when Kiana left for Oregon, and he argues that her "later decision to unilaterally withhold [the child] from Paul and keep him in Oregon" showed her "shortsightedness in terms of examining [the child]'s best interests." Paul argues that this decision damaged not only the child's stability but also Kiana's relationships with the extended family.

Paul also argues that the superior court "overlooked other testimony that Kiana's home, work schedule, and lack of support would continue to create difficulties in caring for" the child. He emphasizes Kiana's work schedule, which involves long overnight hours, and her plans to have a neighbor care for the child while she works. He argues that his own schedule, in contrast, allows more parental time with the child, more time with extended family, and more stability overall.

---

[29]    AS 25.24.150(c)(2).

But Paul "essentially asks us to reweigh the evidence, [and] we ordinarily will not reweigh evidence, especially oral testimony."[30]  The superior court did not ignore Kiana's conduct; to the contrary, it agreed with Paul's characterization of Kiana's conduct as involving "deceiving others [who] love and care for" the child and "really disrupt[ing] [his] stability."  Nor did the court ignore the parents' different levels of family support; it noted that the child's stability in Alaska was "strengthened by the great support network and the family network that is here" and the "factor may weigh slightly" in Paul's favor.  We reject Paul's argument that the court failed to adequately consider the parties' relative "capability and desire" to meet their son's needs.

## V.    CONCLUSION

We VACATE the superior court's custody order and REMAND for further proceedings consistent with this opinion.

---

[30]    *Rosemarie P. v. Kelly B.*, 504 P.3d 260, 266 (Alaska 2021).