R.I., Appellant,

v.

C.C., Appellee.

No. S–9389.

Supreme Court of Alaska.

Aug. 18, 2000.

R.I., pro se, Anchorage.

Maryann E. Foley, Alaska Pro Bono Program, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

The superior court awarded custody of Cindy I. to Constance C., Cindy's mother.[1] Richard I. appeals that decision, as well as related orders of the superior court. Because the superior court did not abuse its discretion in the award of child custody, and because Richard I.'s arguments on every other issue either lack merit or pertain to orders that are not properly before us, we affirm the superior court in all respects.

## II. FACTS AND PROCEEDINGS

### A. Facts

Constance C. gave birth to Cindy I. in May 1986. At the time, Constance was married to Allan G.,[2] who was listed as the father on Cindy's birth certificate. Constance and Allan later divorced.

In 1991 Richard I. acknowledged his paternity of Cindy in writing. The Child Support Enforcement Division (CSED) commenced a child support case against Richard in 1992.

From her birth until August 1994, Cindy lived with Constance in Alaska. Constance then moved to Texas; Cindy stayed with Richard in Alaska until she went to visit her mother in Texas in October 1994.

Cindy remained with Constance in Texas until early 1995. During that time, Constance had difficulty controlling Cindy's behavior. Constance asked Richard if he would take care of Cindy. Cindy then returned to Alaska to stay with Richard.

In May 1995 Richard received orders to undergo training for the Air National Guard. He made arrangements to have family friends care for Cindy until he returned. Richard returned in November 1995.

While Richard was gone, Cindy was sexually assaulted on several occasions by one of her caretaker's sons. Cindy did not disclose this to any of her adult caretakers and went to live with a family friend. When Richard returned to Alaska, Cindy lived with him. Because of the changes in living arrangements, Cindy was enrolled in five schools during the time that she was in the care of Richard or Richard's friends.

Constance returned to Alaska in February 1996 and located Cindy through Cindy's school. Cindy split her time between her parents' residences until school ended in May. In June Richard received orders to mobilize for the Big Lake fire, and Cindy lived with her mother full-time. Cindy has remained in her mother's care since then.

At least from 1995 to 1997, Cindy suffered from emotional problems. In October 1995 she deliberately stepped in front of a school bus. In December 1996 she was admitted to Charter North Hospital following suicidal statements and gestures at school. Upon admission, she was hostile and moody; she also expressed feelings of worthlessness, hopelessness, and suicidal ideation. While at

---

**1.** In order to ensure anonymity for the persons involved in this case, we use pseudonyms in the text of this opinion.

**2.** See supra note 1.

the hospital, Cindy disclosed her sexual abuse, after which her behavior improved. She did not report any further suicidal ideation.

Cindy was discharged from the hospital in January 1997. She then entered therapy to address her extreme anger, manipulative behaviors, depression, and eating disorders.

### B. *Proceedings*

On August 5, 1996, Constance filed a complaint for custody, requesting sole legal and physical custody of Cindy, with Richard receiving reasonable visitation. The complaint also asked, among other things, that Constance be allowed to apply for Cindy's permanent fund dividend. The case was assigned Case No. 3AN–96–6146 (Case 6146). On the same day, Constance filed a motion for interim custody.

Shortly after Constance filed her action, Richard filed a complaint against Constance and CSED. The case was assigned Case No. 3AN–96–6307 (Case 6307). Richard's complaint asked the court to (1) restrain the defendants from attempting to collect money from him; (2) order paternity testing; (3) award him physical custody of Cindy; and (4) order the return of monies that had been collected from him.

In September 1996 Richard filed an answer and counterclaim to Constance's complaint in Case 6146. He asserted counterclaims that were very similar to the claims he asserted in Case 6307. In addition, he requested the court to order Constance to withdraw her application for Cindy's 1996 permanent fund dividend. The record contains no indication that Richard opposed Constance's motion for interim custody.

On November 4, 1996, Richard moved the court to consolidate Case 6146 and Case 6307 because their issues were "similar in nature." Superior Court Judge Elaine M. Andrews granted the motion and assigned the consoli-

dated cases to Superior Court Judge Michael L. Wolverton.

On November 29, 1996, Judge Wolverton awarded interim custody to Constance, with reasonable visitation to Richard. The court also held in abeyance a ruling on child support until the completion of an investigation and hearing in a collateral proceeding involving Richard and CSED and dealing with Richard's child support obligations.[3]

In December 1996 Richard filed a motion to terminate Constance's interim custody award. Constance opposed the motion. On March 5, 1997, Judge Wolverton held a hearing on the motion and denied it. On the same day, Judge Wolverton appointed the Office of Public Advocacy (OPA) to act as the guardian *ad litem* for Cindy.

In October 1997 Judge Wolverton dismissed Case 6307 as moot because Richard had filed an administrative appeal in his collateral child support case.[4] As Judge Wolverton stated, the two cases that were consolidated are "therefore no longer consolidated, the State is no longer a party to this action, and the case will proceed under case number 3AN 96–6146 regarding any remaining custody issues until further order of this court." Judge Wolverton later denied Richard's request for paternity testing.

Trial was held in March 1998. On June 18, 1998, Judge Wolverton issued Findings of Fact and Conclusions of Law, in which he adopted the recommendations of the guardian *ad litem* and awarded sole legal and physical custody of Cindy to Constance.

On July 27, 1998, Richard filed a late notice of appeal for both Case 6146 and Case 6307. In October 1999 Richard filed a motion for this court to accept his late appeals. We granted the motion with respect to Case 6146 but denied it with respect to Case 6307, finding unacceptable the nine-month delay in appealing the latter case.

---

**3.** In this collateral proceeding, the Revenue Hearing Examiner issued a final administrative decision regarding Richard's child support obligation, which Richard appealed to the superior court. The superior court then dismissed the appeal because Richard filed a late brief. *See* *[R.I.] v. State, Dep't of Revenue, Child Support Enforcement Div.*, Mem. Op. & J. No. 928, at 2

(Alaska, August 4, 1999). We remanded the case to the superior court with directions to reinstate the appeal. *See id.* at 4.

**4.** For discussion of the these collateral proceedings, see *supra* note 3.

### III. STANDARD OF REVIEW

■ We will reverse a custody determination only if the trial court has abused its discretion[5] or if "its controlling findings of fact are clearly erroneous."[6] "A finding of fact is clearly erroneous only when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[7] An abuse of discretion will be found "if the superior court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[8] We also review interim orders for an abuse of discretion.[9]

■ The other issues in this appeal involve legal questions, which we review *de novo*.[10] In doing so, we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[11]

### IV. DISCUSSION

Richard's main contention is that the superior court erred in denying him joint custody of Cindy. He also argues that the superior court erred in (1) denying him interim custody of Cindy; (2) awarding Cindy's 1996 permanent fund dividend to Constance; (3) not ordering paternity testing; and (4) not modifying his child support order. We reject each of Richard's arguments.

#### A. The Superior Court Did Not Abuse Its Discretion in Awarding Constance Sole Legal and Physical Custody of Cindy.

■ Alaska Statute 25.20.060(a) provides that if there is a dispute over child custody, "[t]he court shall award custody on the basis of the best interests of the child. In determining the best interests of the child, the court shall consider all relevant factors including those factors enumerated in AS 25.24.150(c)."[12]

In the instant case, the guardian *ad litem* provided a detailed analysis of each of the factors listed in AS 25.24.150(c). She concluded that it was in Cindy's best interests to grant Constance sole legal and physical custody of Cindy.

Judge Wolverton adopted the guardian *ad litem*'s recommendation and awarded Constance sole legal and physical custody of Cindy. But in doing so, Judge Wolverton did not merely adopt the guardian's report. He independently made findings regarding the factors listed in AS 25.24.150(c). For example, he found that "[Constance] has

5. See *Todd v. Todd*, 989 P.2d 141, 142–43 (Alaska 1999) (quoting *J.W. v. R.J.*, 951 P.2d 1206, 1209 (Alaska 1998)).

6. *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997) (citation omitted).

7. *Id.* (citation omitted).

8. *Id.* (citation omitted).

9. See *Virgin v. Virgin*, 990 P.2d 1040, 1043 (Alaska 1999) (citations omitted).

10. See *State, Dep't of Revenue, Child Support Enforcement Div. v. Kovac*, 984 P.2d 1109, 1111 (Alaska 1999) (citation omitted).

11. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

12. AS 25.24.150(c) provides:

The court shall determine custody in accordance with the best interests of the child under AS 25.20.060–25.20.130. In determining the

best interests of the child the court shall consider
  (1) the physical, emotional, mental, religious, and social needs of the child;
  (2) the capability and desire of each parent to meet these needs;
  (3) the child's preference if the child is of sufficient age and capacity to form a preference;
  (4) the love and affection existing between the child and each parent;
  (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
  (6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;
  (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
  (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
  (9) other factors that the court considers pertinent.

gone the extra mile in dealing with school professionals and mental health authorities and others to take care of the problems [Cindy] is experiencing." He also found that "[g]iven the course of events, particular[ly] since the discovery of the sexual abuse, ... [Constance] has provided a stable and satisfactory environment for [Cindy]. It is clearly desirable to continue that for [Cindy]." Furthermore, Judge Wolverton found that "[Cindy] has a problem, in her view, with her relationship with her father," that Cindy loves her mother but is conflicted about her relationship with her father, and that Cindy prefers to live with her mother.[13] All of these findings are consistent with the guardian *ad litem*'s report.

On appeal to this court, Richard does not argue that any of the superior court's findings of fact were clearly erroneous. He also does not argue that the superior court considered improper factors, failed to consider statutorily-mandated factors, or assigned any such factors disproportionate weight. Instead, Richard argues that the superior court's order was "prejudicial" to him and that the guardian *ad litem* made no effort to observe him interact with Cindy.

■ In child custody proceedings, the best interests of the child is the paramount consideration.[14] Richard's argument that the superior court's decision was "prejudicial" to him does not provide sufficient grounds for reversing the superior court's order.

■ Our review of the record leads us to conclude that none of the superior court's controlling findings of fact is clearly erroneous.[15] The superior court also considered the statutorily-mandated factors and did not assign any such factor disproportionate weight.[16] Finally, there is no indication that the superior court considered improper factors in making its custody determination.[17] We accordingly hold that the superior court

acted within its discretion in awarding Constance sole legal and physical custody of Cindy.

### B. Issues Pertaining to the Interim Custody Order Are Moot.

Richard argues that the superior court erred in denying him interim custody of Cindy. Given that a final award of custody has been made, Richard would be entitled to no relief even if he prevailed on this issue. We therefore hold that issues pertaining to the interim custody order are moot.

### C. The Superior Court Did Not Err in Ordering the Department of Revenue to Hold Cindy's 1996 Permanent Fund Dividend.

■ Richard argues that the superior court erred in awarding Cindy's 1996 permanent fund dividend to Constance, and that the dividend should have been awarded to him. Constance responds that the superior court did not order the Department of Revenue to issue the dividend to her.

The superior court ordered the Department of Revenue "to hold the Permanent Fund Dividend of [Cindy] ... until a further court order is issued as to the disbursement of the minor child's Permanent Fund Dividend." The record does not indicate that the court ever ordered the dividend to be disbursed to Constance. Richard incorrectly asserts that the superior court awarded Cindy's 1996 permanent fund dividend to Constance; the superior court actually ordered the dividend to be held.

It will often be appropriate for a court to order the Department of Revenue to hold a child's permanent fund dividend until custody issues pertaining to that child are resolved. Because Richard presents us with no reason

---

13. When the guardian *ad litem* made her recommendations, Cindy was almost twelve years old. Judge Wolverton found that Cindy "is of an age that her preference should be taken into consideration by the court."

14. *See I.J.D. v. D.R.D.,* 961 P.2d 425, 431 (Alaska 1998) (quoting *Craig v. McBride,* 639 P.2d 303, 306 (Alaska 1982)).

15. *See Borchgrevink v. Borchgrevink,* 941 P.2d 132, 134 (Alaska 1997) (citation omitted).

16. *See id.* (citation omitted).

17. *See id.* (citation omitted).

to conclude that the superior court erred in doing so here, we affirm the court's order.[18]

### D. The Superior Court Did Not Err in Denying Richard's Request for Paternity Testing.

■ The superior court denied Richard's request for paternity testing, which he made in both Case 6146 and Case 6307. Richard argues that the superior court erred in failing to order paternity testing, suggesting that it is in Cindy's best interests to know who her biological father is. Constance argues that the paternity testing issue is not properly before this court for review. She also argues that Richard's requests for paternity testing were defective and that he did not provide the superior court with sufficient reasons to order paternity testing. We hold that the superior court did not err in denying Richard's request for paternity testing.

The version of AS 25.20.050(e) that was in effect when Case 6146 was filed[19] required courts to order paternity testing in certain actions "in which paternity is contested."[20] Case 6146 is not such a case. Constance has not alleged that someone other than Richard is Cindy's biological father; Richard stated to the superior court that he has not denied his paternity of Cindy.[21] Because neither party has contested Richard's paternity of Cindy, this is not a case "in which paternity is contested." We accordingly hold that the superior court did not err in denying Richard's request for paternity testing.

### E. Issues Pertaining to Richard's Child Support Obligation Are Not Properly Before Us for Review.

■ Richard argues that the superior court erred in refusing to modify his child

support obligation. Constance counters that this issue is not properly before us for review.

Judge Wolverton found that Richard had pursued the child support issue in his collateral child support proceeding. As Judge Wolverton noted, another superior court judge had dismissed Richard's administrative appeal regarding Richard's child support obligations. Judge Wolverton accordingly did not address the issues pertaining to child support modification.

Judge Wolverton did, however, inform Richard that he could appeal the dismissal of his administrative appeal to this court. Richard has done so.[22] In that case, we remanded the dismissal of Richard's administrative appeal with directions to reinstate the appeal.[23]

Judge Wolverton therefore did not rule on issues pertaining to Richard's child support obligations, and they are being addressed in a separate proceeding before a different judge. We hold that these issues are not properly before us for review.

### V. CONCLUSION

Because the superior court did not abuse its discretion in awarding sole legal and physical custody of Cindy I. to Constance C., and because Richard I.'s arguments on every other issue either lack merit or pertain to orders that are not properly before us, we AFFIRM the superior court in all respects.

---

18. We note that the record does not indicate whether the permanent fund dividend was ever disbursed. Because Constance has been granted sole legal and physical custody of Cindy, she may wish to petition the superior court to order the disbursement of the dividend to her.

19. Because we denied Richard's untimely appeal of Case 6307, we address only the paternity testing issues raised in Case 6146.

20. Former AS 25.20.050(e) (1996). The current version of AS 25.20.050(e) also requires courts to

order paternity testing in certain "proceedings in which paternity is contested."

21. Richard's major reason for seeking paternity testing appears to be to confirm that he is Cindy's biological father, not to prove that he is not her biological father.

22. See [R.I.] v. State, Dep't of Revenue, Child Support Enforcement Div., Mem. Op. & J. No. 928 (Alaska, August 4, 1999).

23. See id. at 4.