**Cindy Lee VELASQUEZ, Appellant,**

v.

**Joe VELASQUEZ, Appellee.**

**No. S–10118.**

Supreme Court of Alaska.

Jan. 11, 2002.

---

Cindy Velasquez, pro se, Anchorage, Appellant.

Steven Pradell, Steven Pradell & Associates, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Cindy Velasquez lost custody of her three minor children to their father, Joe Velasquez, after a two-day trial. Cindy alleges on appeal that the trial court abused its discretion by considering an improper factor, by assigning disproportionate weight to that factor while ignoring others, and by failing to base its custody decision on the best interests of the children. Specifically, Cindy contends that it was improper for the trial court to consider as a factor her departure from the marital home without notice. Cindy argues that the trial court's custody award was based "almost entirely" on this fact. We conclude that the trial court's factual findings were not clearly erroneous, that Cindy's conduct before and after the separation and its effect on the children were proper factors for the court to consider, and that the court did not assign disproportionate weight to those factors. We affirm the trial court's award of custody of the three minor children to Joe.

## II. FACTS AND PROCEEDINGS

Cindy and Joe Velasquez married in September 1980. They had four children together: Eulalia, born in 1981; David, born in 1984; Benjamin, born in 1986; and Andrew, born in 1993. Because Eulalia is not a minor

child, her custody is not at issue here. The couple separated in October 1998.

Before the separation, Cindy was the primary caregiver and a stable parent upon whom the children relied. The trial court found that prior to the separation, "the children were provided with a stable and satisfactory home environment." The court described Cindy as "an adequate parent except in the area of homeschooling the children." It made no findings regarding Joe's parenting prior to the separation. At trial, Eulalia described her father as a "quiet" and "stable" parent.

Joe and Cindy's explanations diverge as to the circumstances of their separation and the events that have transpired since their separation. Joe claims that Cindy never told him or the children where she was staying and that she "disappeared from [their] lives" for a year and "abandoned" the family. Joe alleged that Cindy was having an affair. Joe and Eulalia testified at trial that Cindy ducked down in the car when she was driving with their neighbor, Lawrence Sherman, and that she hid inside when her children stopped by Sherman's house. For several weeks Eulalia did not know where her mother was. Eulalia testified, "we would call her on [her cellular phone] and try to get her to tell us where she was." Joe claims that when the children came across her motor home, Cindy moved the motor home to hide from her children, who were actively looking for her.

Cindy, on the other hand, contends that Joe disparaged and belittled her, that he undermined her discipline of the children, that she left the marital home only after two ultimatums from Joe, that she did not have an affair, and that she told her daughter about her decision to leave before she left. Cindy admits that she did not inform the family of her whereabouts but explains that she was staying with a friend who did not want to be involved in the family's problems. Cindy asserts that she was not hiding from her children, that she made many attempts to reach her children by phone, that she had regular telephone contact with them in July and August 1999, and that she "has been there for the children" since the separation. Joe and Cindy agreed to weekend visitations shortly after they separated. However, it appears that Cindy did not begin regular visitation with the children until August or September 1999.

In August 1999 Cindy filed for divorce, seeking primary physical custody and joint legal custody of the children. Joe sought, and continues to seek, sole legal and primary physical custody of the children.

In deciding the matter of interim custody, Superior Court Judge Rene J. Gonzalez spoke with Benjamin and David privately and heard testimony from Cindy, Eulalia, and Joe. On November 4, 1999, the trial court awarded interim custody of David and Benjamin to Joe, and awarded interim custody of Andrew to Cindy. The trial court found that "[t]he manner in which Cindy Lee left the marital residence and her lack of contact with her minor children for long periods of time is inexcusable and unsettling to the children, creating substantial hardship within them."

At the May 24, 2000 custody trial, Cindy changed her position, asserting that she sought primary physical custody of Andrew only and joint custody of her two older sons. This time Judge Gonzalez awarded primary custody of all three minor children to Joe, and granted Cindy liberal visitation rights.

As the basis for the custody award, Judge Gonzalez reiterated his previous findings that the manner in which Cindy left and her lack of contact with her children was inexcusable and unjustified. He found that Cindy's conduct "could be considered child neglect" and that it caused the children trauma, confusion, substantial hardship, and disruption to the stability of the family. Judge Gonzalez noted that "David and Benjamin have unequivocally expressed a preference to be in the primary physical custody of their father" and that "[t]he minor children are strongly bonded to each other and the older children have committed themselves to protecting their younger brother Andrew from circumstances they perceive may cause harm to him." Finally, he found "insufficient evidence ... to support a finding of emotional abuse other than Cindy Lee's subjective belief." He concluded that awarding primary custody to Joe

serves the welfare and best interests of the three minor children. Cindy seeks reversal of this decision with instructions to hold a new hearing.

## III. DISCUSSION

### A. Standard of Review

 We will reverse a trial court's custody determination if critical factual findings were clearly erroneous or if there has been an abuse of discretion.[1] A finding is clearly erroneous if a review of the entire record leaves us firmly convinced that a mistake has been made.[2]

### B. It Was Not Improper for the Trial Court To Consider Cindy's Departure from the Marital Home Without Notice, Her Avoidance of the Children After She Left, and the Effect of Her Conduct on the Children.

 Cindy argues that in awarding custody of the three minor children to Joe, the trial court considered an improper factor: that Cindy left the marital home without notice and disrupted what the trial court characterized as a stable family environment. She does not argue that the trial court failed to consider the statutory factors. Rather, she contends that the trial court's order had the effect of punishing her by giving weight to the fact that she left the marriage. She maintains that Judge Gonzalez based his de-

cision on his belief that Cindy lacked good cause to leave the marriage, his dislike for the manner in which she left the marriage, and the effect her leaving had on the children. Cindy concludes that the "no fault" divorce statute prohibits the court from considering the manner in which Cindy left the marriage in making its custody determination.

 Alaska Statute 25.24.150(c) requires the superior court to base its custody decision on the best interests of the children.[3] "It is an abuse of discretion to consider improper factors, to fail to consider relevant statutory factors, or to assign disproportionate weight to some factors while ignoring others."[4] The superior court "may consider only those facts that directly affect the well-being of the child."[5]

Cindy contends that the manner and circumstances in which she left the marriage and its effect on the children were improper factors for the trial court to address in assessing the statutory factors. Joe responds that the trial court may consider the mother's abandonment of the children and her other actions or omissions that detrimentally affected the children. He notes that Cindy admitted that the well-being of the children was affected by her actions and that the overwhelming evidence in the record shows this detrimental effect.[6]

The trial court's analysis of the custody issues in this case was wholly appropriate.

---

1. *R.I. v. C.C.*, 9 P.3d 274, 277 (Alaska 2000).

2. *City of Hydaburg v. Hydaburg Coop. Ass'n*, 858 P.2d 1131, 1135 (Alaska 1993).

3. The nine factors under AS 25.24.150(c) are:

 (1) the physical, emotional, mental, religious, and social needs of the child;
 (2) the capability and desire of each parent to meet these needs;
 (3) the child's preference if the child is of sufficient age and capacity to form a preference;
 (4) the love and affection existing between the child and each parent;
 (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
 (6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;

 (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
 (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
 (9) other factors that the court considers pertinent.

4. *West v. West*, 21 P.3d 838, 841 (Alaska 2001).

5. AS 25.24.150(d).

6. Joe's brief discusses how each statutory factor supports the award of custody to him. Because Cindy does not dispute that the trial court considered all of the statutory factors, we need not analyze whether each factor supports the custody award.

It properly weighed the negative impact on the children of Cindy's abrupt departure from the home and her lack of contact with the children for an extended period of time.[7] The court's findings regarding Cindy's conduct and its effect on the children are in accordance with its obligation under AS 25.24.150(c) to determine custody with the goal of serving the best interests of the children, and under AS 25.24.150(c)(1) and (2) to consider the emotional needs of the children and each parent's capability and desire to meet those needs.[8] The trial court explained that "the manner and circumstances under which Cindy Lee left and her lack of contact with the minor children was inexcusable and without just cause, with the end result that the children were traumatized and a substantial hardship was created by her unwarranted conduct."

Ample evidence in the record supports these findings. Cindy admitted on the witness stand that David and Benjamin were hurt by her abrupt departure, that the two boys continue to have anger issues, and that her abrupt departure is one reason why David prefers to live with his father. Eulalia testified that she was upset when she saw the note from her mother saying she had left, and that she and her siblings tried calling every place they could think of to try to find her. She testified that she and her brothers were upset by the fact that their mother was gone for several weeks during which time they did not know where she was staying. "We banded together and tried to the [sic] best we could to keep things going until she got back." She further testified that on at least two occasions, her mother ducked down in Lawrence Sherman's car to hide from Eulalia and her siblings. Eulalia stated that her mother refused to tell her and her brothers where she was staying and she did not learn of her mother's whereabouts until she found her motor home at a motor home park in June 1999, eight months after Cindy moved out.

This evidence of the children's feelings of fear, sadness, anger, and abandonment clearly touches upon the issue of the best interests of the children [9] and Cindy's capability and desire to meet her children's emotional needs.[10] Therefore, it was not improper for the trial court to factor these concerns into its decision. Although we can imagine domestic violence cases in which an abused spouse may be forced to avoid contact with the children to hide from the abusive spouse, Cindy presented no evidence that her conduct was motivated by fear for her safety. The trial court concluded that there was insufficient evidence to support a finding of emotional abuse "other than Cindy Lee's subjective belief" and Cindy does not challenge this finding.

■ Cindy further argues that the effect on the children of the breakup of the parties' marriage should not be a factor in awarding custody. She argues that the trial court's consideration of this factor violates the "no fault" divorce statute, which the Alaska legislature enacted with the specific intent to remove fault of a party for the breakup of a marriage from the custody determination. Cindy further argues that the trial court's order "was based almost solely on its belief that Cindy lacked good cause to leave the marriage and the affect [sic] her leaving had on the children." Joe responds that the trial court was not punishing Cindy for leaving the marriage, but rather based its decision on the well-founded conclusion that her actions and omissions were so extreme as to constitute child neglect. Joe argues that in some cases the facts surrounding couples breaking up are relevant to the best interests of the children and they were properly considered here.

Cindy is correct that in 1968 Alaska eliminated the concept of fault from custody de-

**7.** *See Morel v. Morel,* 647 P.2d 605, 607 (Alaska 1982).

**8.** AS 25.24.150(c)(1) and (2) also require the court to consider the capability and desire of each parent to meet the children's physical, mental, religious, and social needs.

**9.** *See* AS 25.24.150(c).

**10.** *See* AS 25.24.150(c)(2).

terminations.[11] Here, however, a distinction must be made between fault for a divorce, which may not be considered, and Cindy's avoidance of her children and its effect on their emotional well-being. Joe alleged, and Eulalia confirmed, that Cindy refused to tell her children where she was staying and literally hid from them for several weeks. She did not seek regular visitation with her children until nine months after she moved out. As discussed above, there is ample evidence that the children were traumatized by their mother's behavior. We conclude that the trial court did not assign fault for the divorce.

■ Cindy further argues that the fact that she left her marriage was the "determinative factor that caused the trial court to award custody to Joe." She contends that the trial court's application of the statutorily mandated factors was colored by the fact that she decided to leave the marriage. However, as Cindy acknowledges in her brief, the trial court relied not just on the fact that she left the marriage, but the manner in which she left and its effect on the children. As discussed above, the court did not err in considering these facts.

Furthermore, the trial court considered more than just the fact of Cindy's departure and its effects in assessing the statutory factors and the best interests of the three minor children. In addition to making findings on the manner in which Cindy departed and its effect on the children, the trial court addressed Joe's ability to address the children's needs, David and Benjamin's preference to live with their father, and the importance of preserving the sibling bond by keeping the children together. All of these facts are pertinent factors that affect the best interests of the children. The trial court did not disproportionately weigh Cindy's conduct and its impact on the children.

## C. The Trial Court Did Not Err in Entering a Custody Order that Had the Effect of Changing Its Interim Custody Determination.

■ The trial court concluded in its interim custody order that Cindy was the parent who could best meet Andrew's mental and emotional needs, notwithstanding its conclusion that "[t]he manner and circumstances in which Cindy Lee left the marital residence and her lack of contact with her minor children for long periods of time is inexcusable and unsettling to the children, creating substantial hardship within them." Cindy argues that the trial court erred because no evidence was submitted at trial to show that the trial court's interim decision awarding her custody of Andrew was clearly erroneous or that circumstances had changed since she was awarded interim custody.

■ Modification of a final custody award requires evidence of changed circumstances and evidence that the modification is in the best interests of the child.[12] By contrast, we have long held that the trial court's custody decision requires only an analysis of the AS 25.24.150(c) factors and consideration of the best interests of the child.[13] There is no legal authority to support Cindy's contention that the trial court must find changed circumstances to justify altering its interim custody award.

The period of time from separation to trial when a parent has custody may be considered in determining the relative stability of the parties, but there is no requirement that the trial court consider this factor.[14]

11. AS 25.24.150 (formerly AS 09.55.205 [renumbered in 1983]; enacted as ch. 160, § 1, SLA 1968); see also Sheridan v. Sheridan, 466 P.2d 821, 824 n. 13 (Alaska 1970) (explaining the purpose and effect of the 1968 law).

12. AS 25.20.110(a) ("An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."); see also J.L.P. v. V.L.A., 30 P.3d 590, 595 (Alaska 2001).

13. See, e.g., R.I. v. C.C., 9 P.3d 274, 277 (Alaska 2000); Virgin v. Virgin, 990 P.2d 1040, 1044–45 (Alaska 1999); Park v. Park, 986 P.2d 205, 207 (Alaska 1999). By ruling that an award of custody to one parent is in the best interests of the child, it is implied that a custody award to the other parent would not be in the child's best interests.

14. See McDanold v. McDanold, 718 P.2d 467, 470 n. 4 (Alaska 1986) (noting that to find an abuse of discretion based on the trial court's failure to consider the separation-to-trial time

Furthermore, a trial court may not give presumptive preference at the final custody disposition to the parent who was awarded interim custody.[15] To give preference in awarding final custody to the parent who is awarded interim custody would deprive the noncustodial parent of the benefit of a decision based on a fully developed record. During the interim custody proceedings, a trial court generally does not have complete evidence relevant to each statutory factor as it does when it makes its final custody determination. Accordingly, the trial court did not err in failing to address whether circumstances had changed since Cindy was awarded interim custody of Andrew.

## IV. CONCLUSION

The trial court did not commit error in considering the manner and circumstances in which Cindy left the marital home, her lack of contact with the children after she left, and the effect of her conduct on the children. These are not improper factors because the negative impact of Cindy's conduct on the children is pertinent to the best interests of the children and her capability and desire to address their emotional needs. Neither did the trial court disproportionately weigh these facts. In making its determination of the children's best interests, it also considered the children's preferences, the educational needs of the children, and the bond between the siblings. The trial court was not required to find that circumstances had changed since its interim custody award of Andrew to Cindy. The changed circumstances rule applies not to a final custody award, but rather only to custody modifications. We AFFIRM the trial court's award of custody of the three minor children to Joe.

period when the mother had exclusive custody would encourage parties to embark on pretrial maneuvering).

15. *Id.; see also Carle v. Carle,* 503 P.2d 1050, 1053 n. 6 (Alaska 1972).