Stacie L. SMITH, Appellant,

v.

Ronald D. WEEKLEY, Appellee.

No. S–10600.

Supreme Court of Alaska.

July 18, 2003.

Gayle J. Brown, Anchorage, for Appellant.

David S. Houston, Houston & Houston, P.C., Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

In this action for child custody, the superior court awarded interim custody to the father and later adopted the interim custody arrangement as the final one. The mother contests this decision, maintaining that the court applied an incorrect standard in reaching its final custody determination and considered one statutory best interests factor to the exclusion of all others. Because we agree that the superior court failed to apply the correct standard to its child custody determination and that it erroneously applied the statutory best interests factors, we remand for a new custody determination.

## II. FACTS AND PROCEEDINGS

### A. Facts

The parents in this child custody action, Ronald Weekley and Stacie Siver (formerly Smith), were never married but had one child together, Dalton. For at least two years before this action was initiated, Dalton alternated between each parent's home on a weekly basis. At the time of trial, Dalton was six years old and was in the middle of his first year of kindergarten, and both of his parents had married other partners. Ronald Weekley and his wife, Dalton's stepmother, had an almost two-year-old daughter who lived with them, and they were expecting a second child. Stacie Siver had an eight-year-old daughter who lived primarily with her father and visited with Stacie and her husband on certain weekends of each month. For most of Dalton's life, both of his parents had resided in Anchorage.

The Sivers moved to Wasilla at some point in 2001. Siver planned to enroll Dalton in a private school there, while Weekley anticipated that Dalton would attend public school in Anchorage. Prior to the move, the parties had not reached an agreement regarding Dalton's future placement. The parties were also in disagreement regarding Dalton's medical needs. In August of 2001 Siver took Dalton to the Alaska Native Medical Center to begin treatment for his "toe walking." According to his doctor at that time, Dalton was unable to walk with his feet flat and his condition was unlikely to remedy itself. The doctor recommended serial casting, which "consists of a walking cast in which the angle of the ankle is changed slowly over time to stretch the tight ankle muscles." The following month, Weekley took Dalton to another doctor for an explanation of the casting. The second doctor expressed the opinion that the two castings which had already been done had sufficiently stretched the appropriate muscle and that no further casting was needed at that time. During the course of the proceedings, Siver emphasized the importance of her overseeing Dalton's care, while Weekley maintained that Siver had overstated Dalton's medical needs and that, whatever they were, he was equally able to meet them.

### B. Proceedings

On August 14, 2001, without informing Siver of his plans, Weekley filed a complaint for permanent custody and a motion for interim custody. In the accompanying affidavit,

Weekley emphasized Siver's decision to move to Wasilla and the disagreement between Siver and Weekley as to where Dalton should be enrolled in school as bases on which the court should place Dalton with him. Siver did not receive service of these documents until August 24, when her attorney contacted Weekley's attorney and arranged to accept service of the complaint and motion on Siver's behalf.

On August 29, not yet having received a reply from Siver, Superior Court Judge Peter A. Michalski granted Weekley's motion for interim custody, ordering visitation for Siver every other weekend and requiring her to begin paying child support. The interim custody order was sent to Siver and Weekley by U.S. mail on August 30. That same day, prior to receiving the court's order, Siver filed an opposition to Weekley's request for interim custody and cross-petitioned for placement with her. Citing Dalton's medical needs and her status as a stay-at-home mom, Siver maintained that the court should grant her interim custody and provide Weekley with visitation three weekends per month. She also requested that the court hold an evidentiary hearing on the matter.

On September 4, 2001, after receiving the court's August 29 order granting Weekley interim custody, Siver filed a motion to set the order aside on the ground that Siver had not been timely served with the complaint or motion for interim custody. As Siver explained, she had "had custody of the minor child and her opposition to the motion which was timely filed was never considered by the court." In her motion asking the court to set aside its interim order, Siver maintained: "The order was improvidently entered prior to defendant's ten day time to respond to the underlying motion. Defendant and her counsel were *not* served with the Complaint or other documents until August 24, 2001, in the afternoon. The opposition was filed on August 30, 2001, well within the 10 day response period."

Siver's opposition to Weekley's motion and request to have the order set aside were followed on September 5 by a reply in which Weekley argued that the interim order should remain in place and requested that the court issue a writ of assistance to facilitate the transfer of custody from Siver to

him. In his reply, Weekley contended that Siver had subjected Dalton to medical treatment which may have been unnecessary, that she had unilaterally cut off all contact between Weekley and Dalton, that she had falsely alleged domestic violence against Weekley to avoid transferring custody of Dalton, and that when these steps failed to prevent Weekley from obtaining interim custody, she fled with the child. Additionally, Weekley contended that Siver had a history of involvement with alcohol and violent behavior. That same day, the court issued a Writ of Assistance to Weekley and denied Siver's motion to set aside the interim custody order. The court set a hearing date of September 18 to further address the issue of interim custody.

Siver then filed a motion requesting expedited reconsideration of the court's decision to leave the interim custody order in place until the hearing. Siver argued that Weekley had minimized Dalton's medical condition in his affidavit and attached copies of Dalton's medical records to demonstrate that Dalton "is casted on both legs and needs constant medical care and treatment from the Alaska Native Medical Center." She contended that because she had been his primary care provider with respect to these treatments and was not employed outside the home, it would be contrary to Dalton's best interests to leave him in his father's care. Siver also stated that she did not believe that her opposition had been fully considered by the court and expressed concern about her son's medical needs not being taken seriously and about his being enrolled in public school in Anchorage. On September 12 the court denied Siver's motion to reconsider his September 5 order, explaining that the motion "does not state a basis to modify the order of September 5, 2001" and that "[n]othing in the material submitted excludes the probability that the father's home can provide adequate follow through on the child's care."

An evidentiary hearing was held on September 18. The court heard approximately two hours of testimony, primarily from Weekley and Siver, regarding the allegations made by each in their respective affidavits. After making some findings regarding Dal-

ton's situation, the court reaffirmed its earlier decision to grant Weekley interim legal and physical custody with weekend and holiday visitation for Siver. According to the court, "there is more stability leaving Dalton in the school that he's in, primarily in the household that he's in."

Upon motion of the parties, the superior court appointed John Hanscom as custody investigator. Hanscom spoke with both parents and with Dalton, reporting that Dalton "did not believe his father and stepmother were being truthful in their statements about his mother," that he had witnessed his stepmother "strike his father with a 'pool stick'" and that he wanted to live primarily with his mother and was angry his father would not let him stay with her. According to Hanscom, Dalton was "sad he cannot be with his mother." Hanscom visited both homes and found each of them to be within community standards. He recounted both parents' histories of involvement with the legal system, which included several domestic violence complaints, most of which had been dismissed. Finally, Hanscom went through each of the eight statutory best interests factors outlined in AS 25.24.150(c) and concluded that he believed it would be in Dalton's best interest for him to be placed primarily with his mother and to have weekend and holiday visitation with his father.

Trial took place on February 19, 2002. At the close of the hearing, the court explained that it disagreed with Custody Investigator Hanscom's recommendations, stating that it "reached this decision, which is contrary to the recommendation of the custody investigator, partly because [it], in evaluating his ideas about what the facts mean, [came] to different conclusions." After discussing these discrepancies, the court concluded that it did not find them, "on a total balance, to be a justification to change the current situation, which [it found] to be relatively stable, though imperfect." The court ultimately held that Weekley should retain primary le-

gal and physical custody and Siver should be permitted visitation three weekends per month and every other week during the summer.

Siver appeals.

## III. STANDARD OF REVIEW

■ "Whether the superior court applied the correct standard of review is a question of law we review *de novo*, determining the rule of law in light of precedent, reason, and policy." [1]

■ While the trial court retains broad discretion in making decisions regarding child custody,[2] its custody determination will be set aside where there has been an abuse of discretion or where the findings of fact are clearly erroneous.[3] "Abuse of discretion is established if the trial court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others." [4] A factual finding will be deemed clearly erroneous only if it leaves us "'with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding.'" [5] In reaching a final child custody determination, "a trial court is required to make findings on the various statutory factors which are sufficient to make the basis of its decision susceptible to review." [6]

## IV. DISCUSSION

### The Final Custody Determination

Siver raises several issues in her attack on the superior court's final custody determination. Two are dispositive, and in several respects meld into each other. She argues first that the superior court improperly treated her motion for custody as an action for modification of an existing order, pointing to the court's statement that she had not shown a sufficient "justification to change the cur-

1. *Barrett v. Alguire*, 35 P.3d 1, 5 (Alaska 2001).

2. *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002).

3. *Id.*

4. *Id.*

5. *Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997) (quoting *Brosnan v. Brosnan*, 817 P.2d 478, 480 (Alaska 1991)).

6. *Id.*

rent situation." Second, she argues that when the court made its final decision, it failed to properly consider the statutory best interests factors. We consider each argument in turn.

### 1. The decision to grant sole legal custody and primary physical custody to Weekley

■ As noted, Siver first argues that the court erred by treating Weekley's motion for custody as an action for modification of an existing custody order rather than as an initial custody determination. She maintains that by stating in its final decision that Siver had not demonstrated a sufficient "justification to change the current situation," that is, the one created by its interim custody order, the court treated the proceeding as one for modification. Siver argues:

> Since she received no hearing on the motion that deprived her of custody originally, (or even notice of the existence of such a motion prior to its being improperly granted by the lower court), it would seem clear that the lower court was not interested in consideration of "evidence" but only in maintaining the "status quo" during the pendency of the lower court proceedings. This appeal is based on the extension of that judicial attitude throughout the proceedings and its application to the lower court's final ruling in this case.

In response, Weekley contends that the court's language "did nothing more than state the obvious fact that awarding custody to Mr. Weekley meant that the current situation would remain as is," and that appellant's argument, premised on a single phrase of dicta, failed to show that the court based its ruling on the changed circumstances doctrine. Weekley concludes that the court's "findings and conclusions do not suggest in any way that he limited his consideration of the evidence to changed circumstances."

We agree with Siver that the proceedings were flawed from the outset, and that by leaving the situation in place without evaluating which placement would be in Dalton's best interests, the trial court applied an inappropriate standard in reaching its ultimate decision. It is undisputed that the court ruled on Weekley's motion for interim custody without having received a reply from Siver and prior to the time having run for her to reply. It is also clear that the court denied Siver's motion to set aside the interim order pending a hearing. While it did grant Siver's request to hold an evidentiary hearing, it does not appear to have conducted a thorough best interests analysis at the close of that hearing, but instead seems to have relied almost exclusively on the "stability" created by its earlier decision to justify leaving Dalton in the primary custody of his father.

At the close of the evidentiary hearing held on September 18, the court made the following findings:

> This is a real hard case because of a couple of things. One is, there is some testimony that there is no physical violence. I don't think I fully accept that notion. There is an anger on the mother's side, on the other hand, which—is [I] suppose in part justified by any kind of behavior by dad—that is equally harmful, however. I rarely see witnesses any more angry than mom has presented herself to be, and that is an awfully hard thing to hide from a child, and really feeds into how the child feels about the world and life and fair play and all these things. So there are a lot of things where both of you need to work on how you relate to the world, to each other, and to Dalton. In the best interests of the child, you look at a lot of factors and counsel have talked about a lot of them. Stability, ability to try to promote [a] relationship with the other parent, the capacity to care for them, the existence of domestic violence. A lot of these things that are to be considered and summed up. And in summary, there are things going for each of you and against each of you on these things. At this point, however, *I think that there is more stability leaving Dalton in the school that he's in, primarily in the household that he's in, so that will be the court's order.*

(Emphasis added.) Along the same lines, at the close of the custody hearing, the court considered various arguments offered by Siver and concluded that it did not "find them on a total balance to be a justification to change the current situation which [it found] to be relatively stable though imperfect." It

is difficult to escape the impression that the superior court approached the final custody order, as it had the initial custody hearing, with the sense that Siver bore the burden of showing changed circumstances in order to justify changing Dalton's placement. If the court did so, it erred in two respects: First, Siver did not bear any burden of showing changed circumstances at either hearing.[7] Second, the original placement of Dalton with his father had resulted from an *ex parte* order that had been issued with no notice to Siver nor any opportunity for her to be heard before it issued. That placement did not create a hurdle for Siver to overcome.

 The stability developed during the period between the grant of interim custody and the court's final custody decision may be a relevant factor in the court's analysis, but it cannot be the primary basis for the court's decision. In *Velasquez v. Velasquez,*[8] we held that while the superior court may take into account as a factor the period of time between the entry of an initial and a final custody award, there is no requirement that the court do so, nor may the court accord a presumptive preference to the parent who had interim custody.[9] To do so "would deprive the noncustodial parent of the benefit of a decision based on a fully developed record."[10] To do so under the circumstances of this case would be even more problematic, since the court's August 29 interim custody order was entered before Siver had a chance to reply to Weekley's allegations and its September 18 interim custody order left its initial order in place without a substantive discussion of other relevant factors.

In reaching its decision at the close of the September 18 hearing regarding interim custody, the superior court mentioned some of the considerations relevant to a best interests determination. However, its conclusion indicates that it was primarily interested in maintaining stability in Dalton's life, and that Dalton should therefore remain with his father. While we agree that stability is important, especially in the life of a young child, it cannot be the paramount consideration under circumstances such as these. Prior to the filing of Weekley's motion for interim and permanent custody, Dalton had evenly split his time between his mother and father. The hearing took place within three weeks of the date the motion was filed. By ordering that Dalton remain in his father's custody because of the stability it affords, the court necessarily affirmed its initial order, which itself was erroneously entered before Siver had been given an opportunity to reply. Given this procedural deficiency, we can neither sanction the entry of the interim custody order nor allow it, *de facto,* to stand as an order requiring Siver to show changed circumstances in order to attack.

The final custody order does not clearly set out what standard the court applied in its decision. The only glimpse provided into the court's thought process was the reference to the absence of a "justification to change the current situation." Because this statement reflects the use of what is essentially a presumptive preference for Weekley based on the court's interim custody decision, we vacate the court's final order.

## 2. The statutory best interests factors

 Siver makes two main arguments with respect to this issue. First, she maintains that the court essentially ignored all factors but one, "the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent," thereby failing to properly consider the statutory best interests factors.

**7.** *Barrett v. Alguire,* 35 P.3d 1, 5 (Alaska 2001) (explaining that *existing* child custody or visitation award may be modified under certain circumstances; where no such award has yet been entered, no basis exists for modification).

**8.** 38 P.3d 1143 (Alaska 2002).

**9.** *Id.* at 1148–49.

**10.** *Id.* at 1149. *See also McDanold v. McDanold,* 718 P.2d 467, 470 n. 4 (Alaska 1986) (stating that

custodial parent may not be given presumptive preference in final custody disposition so as to prevent "pretrial custody maneuverings"); *Carle v. Carle,* 503 P.2d 1050, 1053 n. 6 (Alaska 1972) (observing that while there might be some preference for leaving child in care of parent who most recently had custody, this court would not establish such presumption "lest it lead to pre-hearing maneuvering for possession of the child"), *overruled on other grounds by statute as noted in Deivert v. Oseira,* 628 P.2d 575, 579 (Alaska 1981).

Next, she claims that it was an abuse of discretion not to place specific emphasis on the seventh factor—evidence of domestic violence, child abuse, or child neglect.

■ Decisions regarding the award of child custody are governed by AS 25.20.060, which provides in relevant part:

(a) If there is a dispute over child custody, either parent may petition the superior court for resolution of the matter under AS 25.20.060–25.20.130. The court shall award custody on the basis of the best interests of the child. In determining the best interests of the child, the court shall consider all relevant factors including those factors enumerated in AS 25.24.150(c).

Alaska Statute 25.24.150(c) sets out the factors a court should consider in determining the best interests of the child. These factors are:

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

Whether involved in an initial or final child custody determination, a parent desiring custody must demonstrate that placement of the child with him or her would be in the child's best interests.[11] In undertaking this "best interests analysis," the trial court need not "specifically address the statutory factors detailed in AS 25.24.150(c), and make explicit 'ultimate' findings that the best interests of the children require the custodial disposition reached," but its findings "must either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[12]

■ The court is encouraged to consider these eight statutory factors, as well as "other factors that the court considers pertinent" in deciding what placement is in a child's best interests.[13] Siver maintains that the trial court considered one of these factors to the exclusion of all others—"the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent."[14] In doing so, she argues, the court essentially ignored factors such as the child's needs, each parent's ability to meet those needs, and the love and affection existing between the child and each parent. Siver also argues that the court failed to consider the seventh factor, which discusses the impact of evidence of domestic violence or child abuse. She claims that the record contained "ample evidence of Ronald Weekley's temper, his physical and verbal abuse toward both Ms. Siver and the child and his prior history of domestic violence directed against Ms. Siver." Making specific findings only on her ability to foster an open relationship with Weekley, Siver maintains that "the trial court appears to have used Ms. Siver['s] decision to move to the Mat–Su Valley, some forty miles from Anchorage, her temporary denial of visitation based on concerns over her child's health care, and her apparent inability to 'hide her feelings' on the witness stand" as the basis for its decision. According to Siver, this amounts to the placement of disproportionate weight on one factor while ignoring other relevant factors,

**11.** *Velasquez,* 38 P.3d at 1146.

**12.** *Borchgrevink v. Borchgrevink,* 941 P.2d 132, 139–40 (Alaska 1997).

**13.** AS 25.24.150(c).

**14.** AS. 25.24.150(c)(6).

and therefore constitutes an abuse of discretion.

Weekley responds by cataloguing each factor and the evidence before the court which supported it. He contends that "the trial court considered this evidence in making its findings of fact and conclusions of law under the statutory best interest factors." Regarding Siver's claim that the court afforded AS 25.24.150(c)(6) too much weight, Weekley maintains that the "significant consideration" given to this factor by the court was justified by the court's express finding that Siver's "expressions did not give the court any confidence that she would contribute to making it easy for the father to have a continuing relationship with the child." Finally, Weekley justifies the court's failure to address the issue of domestic violence or child abuse by noting that "the custody investigator reported that there was no evidence of domestic violence in either parent's home."

The court made only limited findings. First, regarding Dalton's expression of preference to live with his mother, the court found that this was based not on a genuine desire to live with his mother or, as Hanscom posited, an expression of his love and affection for his mother, but as a way of helping his mother because she was hurt by these proceedings.[15] Next, regarding Dalton's expression of "meanness in dad's home" and his experiences with other "hurtful" and "inappropriate conduct," the court found that these things were "harmful and ... shouldn't occur." Finally, on the issues raised by Siver regarding Weekley's unwillingness to foster a relationship between her and her son, the court found that Weekley's exclusion of Siver from a school conference, his refusal to allow Dalton to go to a Halloween event with his mother, and his screening of Siver's calls were all reasonable.[16] The court made no additional findings, nor did it make any mention of AS 25.24.150(c) or specifically in what way Dalton's best interests would be better met by placement with his father.

In *Borchgrevink v. Borchgrevink,*[17] we held that in making a final child custody determination, a trial court need not "specifically address the statutory factors detailed in AS 25.24.150(c), and make explicit 'ultimate' findings that the best interests of the children require the custodial disposition reached," so long as its findings "either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[18] We went on to explain that it was not error for the trial court to fail to expressly address factors not disputed by the parties and those which did not favor the parent to whom custody was denied.[19] However, in *Borchgrevink,* unlike in the present case, there was no significant dispute involving most of the statutory factors and the court made extensive findings regarding all relevant factors and stated the legal conclusions underlying its decision.[20]

Aside from AS 25.24.150(c)(6), it is not clear which factors the court found important to this inquiry or why. As in *Park v. Park,*[21] in which we held that the superior court had erred in considering only one factor to the exclusion of all others, while the superior court's findings "clearly indicate one statutory factor that the court considered important to its analysis, they provide no meaningful insight into what the court thought of other factors that undisputedly had relevance under the evidence actually presented at trial— or whether the court even considered other relevant factors."[22]

There is no indication of the court's views on Dalton's medical, emotional, educational, or social needs, on which parent can better

---

**15.** This finding is related to AS 25.24.150(c)(3), "the child's preference if the child is of sufficient age and capacity to form a preference."

**16.** These latter three findings are most closely related to AS 25.24.150(c)(6), "the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent."

**17.** 941 P.2d 132 (Alaska 1997).

**18.** *Id.* at 139–40.

**19.** *Id.* at 138.

**20.** *Id.* at 135–37.

**21.** 986 P.2d 205 (Alaska 1999).

**22.** *Id.* at 208.

meet those needs, on Dalton's relationships with his stepparents or siblings, on his father's admitted temper, or on which parent provides the more appropriate home environment, despite each of these issues having been raised by the parties at trial. While the court need not make findings on every possible issue, it should at least make findings on those which were relevant and which ultimately influenced its decision. Because it is not clear to us which factors the superior court considered important or what other considerations were involved in reaching its decision, we remand for the superior court to make specific findings on all relevant factors as required by AS 25.24.150(c). Upon remand, the parties should be allowed to present updated evidence to the court.[23]

## V. CONCLUSION

Because it was error to accord a presumptive preference to Weekley based on the interim custody decision and because the court relied on one statutory best interests factor to the exclusion of all others, we REMAND for a new determination, based on all of the currently available evidence, of which placement will be in Dalton's best interests.

---

23. Siver also challenges some of the court's factual findings as clearly erroneous. Because we remand for consideration of all currently available evidence, in which new factual findings will have to be made, we do not consider Siver's challenges to factual findings made in the course of the first trial.